Joseph LEITINGER, Bonnie Leitinger and Services Unlimited, Plaintiffs-Appellants,

v.

DBART, INC., d/b/a Barthenheier Construction, Inc., and Heritage Mutual Insurance Company, n/k/a Acuity, a mutual insurance company, Defendants-Respondents-Petitioners,

VAN BUREN MANAGEMENT, INC., American Economy Insurance Company and Compcare Health Services Insurance Corp., Defendants.

Supreme Court

*No. 2005AP2030. Oral argument March 2, 2007.*
*—Decided July 3, 2007.*

2007 WI 84

(Also reported in 736 N.W.2d 1.)

For the defendants-respondents-petitioners there were briefs by *Arthur P. Simpson, Christine M. Rice,* and *Simpson & Deardorff, S.C.,* Milwaukee, and oral argument by *Arthur P. Simpson.*

For the plaintiffs-appellants there was a brief by *Timothy J. Aiken, James C. Gallanis,* and *Aiken & Scoptur, S.C.,* Milwaukee, and oral argument by *Timothy J. Aiken.*

An amicus curiae brief was filed by *Martha H. Heidt, M H Heidt Law Office,* Mondovi, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals[1] reversing a judgment of the Circuit Court for Milwaukee County, Jeffrey A. Kremers, Judge.

¶ 2. Joseph Leitinger and Bonnie Leitinger, his wife, and Services Unlimited[2] (collectively referred to as Leitinger) sued several defendants, collectively re-

---

[1] *Leitinger v. Van Buren Mgmt., Inc.,* 2006 WI App 146, 295 Wis. 2d 372, 720 N.W.2d 152.

[2] Joseph Leitinger is the owner of and provides general contractor services through Services Unlimited.

ferred to as Acuity,[3] for damages from a personal injury Joseph Leitinger suffered while employed at a construction site.

¶ 3. The parties disputed the reasonable value of Joseph Leitinger's medical treatment in this personal injury action. The health care provider billed Joseph Leitinger $154,818.51 for the treatment rendered, but as a result of negotiated discounts the health care provider accepted $111,394.73 from Joseph Leitinger's health insurance company. The difference between the amount billed and the amount actually paid by Leitinger's health insurance company is $43,424.78. Leitinger's health insurance company protected its subrogation rights in the present case.

¶ 4. The issue of law presented on review is whether, in light of the collateral source rule, evidence of the amount actually paid by a plaintiff's health insurance company for the plaintiff's medical treatment is admissible in a personal injury action for the purpose of establishing the reasonable value of the medical treatment rendered.

¶ 5. Leitinger argues that the amount actually paid by his health insurance company for his medical treatment is evidence of a collateral source payment and is thus inadmissible evidence under the collateral source rule. In contrast, Acuity contends that evidence of the amount actually paid by Leitinger's insurance company

---

[3] The defendants are DBart, Inc. d/b/a Barthenheier Construction, Inc. (a construction contractor), Heritage Mutual Insurance Co. n/k/a Acuity, A Mutual Insurance Company (liability insurer for DBart, Inc.), Van Buren Management, Inc. (owner of the property upon which Leitinger's injury occurred), American Economy Insurance Company (liability insurer for Van Buren Management, Inc.), and Compcare Health Services Insurance Corp. (Leitinger's health insurance company).

for medical treatment rendered to Leitinger is admissible to prove the reasonable value of the medical treatment in this personal injury action when the value of the medical treatment is disputed.

¶ 6. The circuit court ruled that the evidence of the amount actually paid for the medical treatment rendered was relevant to the determination of the reasonable value of the medical treatment and was therefore admissible. The court of appeals reversed the judgment of the circuit court, concluding that the collateral source rule prohibits parties in a personal injury action from introducing evidence of the amount actually paid by the injured person's health insurance company, that is, a collateral source, for medical treatment to prove the reasonable value of the treatment.

¶ 7. For the reasons set forth, we affirm the decision of the court of appeals. We hold, as did the court of appeals, that the collateral source rule prohibits parties in a personal injury action from introducing evidence of the amount actually paid by the injured person's health insurance company, a collateral source, for medical treatment rendered to prove the reasonable value of the medical treatment. We therefore remand this cause to the circuit court for proceedings consistent with this decision and the parties' stipulations.

I

¶ 8. The facts in this case are not in dispute for purposes of this review. In August 2001, Joseph Leitinger was employed as a contractor by Van Buren Management. While at work on a construction site operated by DBart, Joseph Leitinger crashed through the floor, falling 30 feet, sustaining serious injuries. Leitinger incurred extensive medical expenses, which were paid primarily by his health insurance company, Compcare Health Services Insurance Corporation.

116

¶ 9. Leitinger's complaint alleged negligence and safe workplace violations against Van Buren Management, DBart, and their liability insurers. In a special verdict, the jury found DBart 67% causally negligent and Joseph Leitinger 33% causally negligent. Leitinger was awarded $596,881.68.[4]

¶ 10. The parties' liability is not at issue here. The sole dispute involves the appropriate amount Leitinger can recover as damages from the tortfeasor for the cost of Leintinger's medical treatment. In other words, what damages may Leitinger recover from Acuity, the tortfeasor's insurance company, which agreed to stand in the shoes of the tortfeasor and pay whatever sums for which the tortfeasor was liable?

¶ 11. Refusing to apply the collateral source rule, the circuit court denied Leitinger's motion in limine to exclude evidence of the amount actually paid by Leitinger's health insurance company for his medical treatment. The circuit court allowed the parties to proffer as evidence both the amount billed by the medical service provider and the amount paid by Leitinger's health insurance company to prove the reasonable value of the medical treatment rendered. The circuit court also allowed the parties to present expert testimony about the reasonable value of the medical services.[5]

---

[4] The jury award includes the reasonable value of medical treatment, past and future loss of earning capacity, and past and future pain and suffering. Only the reasonable value of Leitinger's medical treatment is before this court on review. Acuity does not dispute the other parts of the jury award.

[5] Neither party, however, presented an expert witness to testify about the reasonableness of the amounts billed or the amounts paid.

¶ 12.  The parties stipulated, for purposes of trial, (1) that the amount Leitinger's health insurance company actually paid for the medical treatment rendered to Leitinger, not the amount billed to Leitinger, was the reasonable value of the medical treatment, and (2) that Leitinger reserved the right to appeal the circuit court ruling that the amount actually paid by his health insurance company for medical treatment rendered to him was admissible evidence of the reasonable value of the treatment. As a result of this stipulation, the jury was presented only with evidence of the amount actually paid for the medical treatment rendered.

¶ 13.  Leitinger was awarded $111,394.73 for his medical expenses, which is the amount Leitinger's health insurance company actually paid for the medical treatment.

¶ 14.  After the jury returned its verdict, Leitinger renewed his motion before the circuit court to exclude evidence of the amount actually paid for his medical treatment, relying on the collateral source rule. Specifically, Leitinger requested "an order by the [Circuit] Court to order a new trial on the issue of medical bills with the Collateral Source Rule enforced; i.e. evidence of the amount paid by the medical insurer excluded pursuant to *Ellsworth*[6] and *Kauffman* [sic]."[7]

¶ 15.  The circuit court denied Leitinger's motion for a new trial and affirmed its prior evidentiary ruling. The circuit court reasoned as follows:  "So, the reasonable value of the services provided to be determined, given that the reasonable value of the services has to be

[6] *Ellsworth v. Schelbrock*, 2000 WI 63, 235 Wis. 2d 678, 611 N.W.2d 764.

[7] *Koffman v. Leichtfuss*, 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201.

determined by the jury, seems to me that one thing they can consider was in fact what was paid and accepted by the medical providers as a potential, not binding, not final, but a potential measure of the reasonable value of the services."

¶ 16. The parties then further modified their stipulation. Acuity agreed that if evidence of the amount actually paid by Leitinger's health insurance company is inadmissible, then the entire amount billed is the reasonable value of the medical treatment rendered. Thus, if Leitinger wins his appeal, he will receive $43,424.78, which is the difference between the amount billed by the medical service provider and the amount actually paid by Leitinger's health insurance company.[8]

¶ 17. Relying on this court's recent decision in *Koffman v. Leichtfuss,* 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201, the court of appeals concluded that "the fact finder should not be allowed to consider 'payments made by outside sources on the plaintiff's behalf, including insurance payments.' "[9] Adhering to the parties' stipulations, the court of appeals added to Leitinger's jury award the difference between the amount the medical service provider billed and the amount paid by Leitinger's health insurance company.

II

■■■■

¶ 18. We ordinarily review a circuit court's ruling on the admission of evidence to determine whether the

---

[8] Acuity's brief asserts that the parties agreed to this stipulation to "streamline" the trial, to save their clients money, and to save the court time.

[9] *Leitinger,* 295 Wis. 2d 372, ¶ 17.

circuit court erroneously exercised its discretion.[10] A reviewing court will affirm a circuit court's exercise of discretion if the circuit court applied the proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable court could reach.

¶ 19. If a circuit court exercises its discretion upon an error of law, the circuit court has erroneously exercised its discretion.[11] The question of law embedded in the circuit court's decision to admit the evidence at issue is the interpretation and application of the collateral source rule. More specifically, the circuit court was called upon to determine whether, as a matter of law, the collateral source rules operates to bar evidence of collateral source payments in a personal injury action when offered for the purpose of determining the reasonable value of the medical treatment rendered.

¶ 20. The question presented in the instant case is not whether the damages are to be limited to or reduced by the amount actually paid for medical treatment rendered but rather whether, in determining the reasonable value of the treatment, the fact-finder may consider the amount actually paid by a collateral source, which in the present case is the injured person's health insurance company. This court decides a ques-

---

[10] *State v. Muckerheide,* 2007 WI 5, ¶ 17, 298 Wis. 2d 553, 725 N.W.2d 930.

[11] *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968) ("If a judge bases the exercise of his discretion upon an error of law, his conduct is beyond the limits of discretion."), *quoted in Kenosha Hosp. & Med. Ctr. v. Garcia,* 2004 WI 105, ¶ 15, 274 Wis. 2d 338, 683 N.W.2d 425.

tion of law independently of the circuit court and the court of appeals but benefiting from their analyses.[12]

## III

¶ 21.   The issue presented requires us to explore three areas: (A) the proper measure of damages for medical treatment rendered in a personal injury action; (B) the collateral source rule and the public policy considerations underlying it; and (C) prior decisions interpreting and applying the collateral source rule.

## A

¶ 22.   At issue in this case is the appropriate measure of damages Leitinger may recover for his medical expenses. We examine the traditional, oft-stated rule for the measure of damages to be recovered for medical expenses and apply this rule in the present case.

■

¶ 23.   The proper measure of damages for medical treatment rendered in a personal injury action is the reasonable value of the medical treatment reasonably required by the injury.[13] The court has explained that "while the actual amount paid for medical services may reflect the reasonable value of the treatment rendered, the focus is on the reasonable value, not the actual charge. In other words, ' "this is a recovery for their value and not for the expenditures actually made or

[12] *Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶ 39, 300 Wis. 2d 1, 728 N.W.2d 693.

[13] *Koffman*, 246 Wis. 2d 31, ¶¶ 25, 27. In this case, there is no dispute regarding the necessity of Leitinger's medical treatment. At issue is only the reasonable value.

obligations incurred." ""[14] " 'The value of medical services made necessary by the tort can ordinarily be recovered although they have created no liability or expense to the injured person . . . .' "[15] For this traditional statement of the damages to which an injured person is entitled for necessary medical treatment, see, *e.g., Koffman v. Leichtfuss,* 2001 WI 111, ¶ 27, 246 Wis. 2d 31, 630 N.W.2d 201; *Thoreson v. Milwaukee & Suburban Transp. Corp.,* 56 Wis. 2d 231, 243, 201 N.W.2d 745 (1972); *McLaughlin v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.,* 31 Wis. 2d 378, 395, 143 N.W.2d 32 (1966) (quoting 22 Am. Jur. 2d Damages § 207 (1965)).

¶ 24.   Thus, the fact-finder determines the reasonable value of the medical treatment rendered, which is not necessarily the amount actually paid or the amount billed for the treatment.[16]

B

¶ 25.   How the fact-finder will evaluate the reasonable value of Leitinger's medical expenses depends

---

[14] *Koffman,* 246 Wis. 2d 31, ¶ 27 (quoting *McLaughlin v. Chi., Milwaukee, St. Paul & Pacific R.R. Co.,* 31 Wis. 2d 378, 395 (quoting 22 Am. Jur. 2d *Damages* § 207 (1965))).

Wis JI—Civil 1756 (2007) states that a plaintiff should be compensated for "the sum of money . . . [that] has reasonably and necessarily been incurred from the date of the accident . . . for the care and treatment of the injuries sustained by (plaintiff) as a result of the accident."

[15] *Koffman,* 246 Wis. 2d at 47 n.6 (quoting Restatement (Second) of Torts § 924 cmt. f).

The reasonable value of the medical services is just one component of what makes the injured plaintiff "whole." Other damages include lost wages, future lost wages, loss of earning capacity, etc.

[16] *Koffman,* 246 Wis. 2d 31, ¶ 56 (quoting *Thoreson v. Milwaukee & Suburban Transp. Co.,* 56 Wis. 2d 231, 245, 201 N.W.2d 745 (1971)).

in part on how the collateral source rule applies to the valuation of medical expenses in the instant case.

■

¶ 26. The collateral source rule is a well-established rule of law in Wisconsin.[17] Simply put, the collateral source rule states that benefits an injured person receives from sources that have nothing to do with the tortfeasor may not be used to reduce the tortfeasor's liability to the injured person. In other words, the tortfeasor is not given credit for payments or benefits conferred upon the injured person by any person other than the tortfeasor or someone identified with the tortfeasor (such as the tortfeasor's insurance company). Thus under the collateral source rule, as the phrase implies, a payment by one who is not a tortfeasor (that is, a payment collateral to the tortfeasor) is treated differently from a payment by the tortfeasor.[18]

¶ 27. The collateral source rule was formally adopted by this court in 1921 in *Cunnien v. Superior*

---

[17] *See, e.g., McLaughlin v. Chi., Milwaukee, St. Paul & Pacific Ry. Co.,* 31 Wis. 2d 378, 143 N.W.2d 32 (1966); *Merz v. Old Republic Ins. Co.,* 53 Wis. 2d 47, 191 N.W.2d 876 (1971); *Thoreson v. Milwaukee Suburban Transp. Co.,* 56 Wis. 2d 231, 201 N.W.2d 745 (1971).

[18] "A payment made by a tortfeasor or a person acting for him to a person whom he has injured is credited against his tort liability . . . ." Restatement (Second) of Torts § 920A(1) (1977).

"Payments made to or benefits conferred on the injured party from other sources [than the tortfeasor or a person acting for him] are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." Restatement (Second) Torts § 920A(2) (1977). In Comment b at 514, the Restatement explains that "Payments made or benefits conferred by other sources are known as collateral-source benefits. They do not have the effect of reducing the recovery against the defendant. . . . [I]t is the

*Iron Works,* 175 Wis. 172, 184 N.W. 767 (1921).[19] We recently summarized the collateral source rule in

tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives."

The general rule governing collateral source benefits has also been set forth as follows:

> [B]enefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages.

1 Dan B. Dobbs, *Dobbs Law of Remedies: Damages, Equity, Restitution* § 3.8(1) at 372–73 (2d ed. 1993).

> The collateral source or collateral benefit rule denies the defendant any credit for payments or benefits conferred upon the plaintiff by any person other than the defendant himself or someone identified with him. Payments made by the plaintiff's own insurer, or gratuitous benefits conferred by others, for example, do not reduce the defendant's tort liability, even though the payments operate to reduce the plaintiff's loss.

2 Dan B. Dobbs, *Dobbs Law of Remedies: Damages, Equity, Restitution* § 8.6(3) at 493 (2d ed. 1993).

2 Dan B. Dobbs, *The Law of Torts* § 380 at 1058 (2001), explains the collateral source rule as follows:

> In many cases, the injured plaintiff receives some compensation for injuries from sources that have nothing to do with the defendant. The plaintiff's own insurance, job benefits, or donations by friends may all operate to reduce the plaintiff's loss. The traditional rule is that compensation from "collateral sources" is none of the defendant's business and does not go to reduce the defendant's obligation to pay damages, either in negligence or in strict liability cases.

[19] In *Cunnien v. Superior Iron Works Co.,* 175 Wis. 172 (1921), the plaintiff was unable to work after being injured in an automobile accident. Even though he received wages through a government-operated vocational training program, the plaintiff's damage award included lost earnings. On appeal, the supreme court determined that the wage payments were not grounds for the diminution of damages owed by the tortfeasor.

*Lagerstrom v. Myrtle Werth Hospital,* 2005 WI 124, 285 Wis. 2d 1, 700 N.W.2d 201, as "help[ing] claimants recover the 'reasonable value of the medical services, without limitation to the amounts paid.' "[20]

¶ 28.   As a rule of damages, "the collateral source rule denies a tortfeasor credit for payments or benefits conferred upon the plaintiff by any person other than the tortfeasor."[21] In other words, "[t]he tortfeasor who is legally responsible for causing injury is not relieved of his obligation to the victim simply because the victim had the foresight to arrange, or good fortune to receive, benefits from a collateral source for injuries and expenses."[22] Accordingly, an award of damages cannot be limited to or reduced by a collateral source payment.

¶ 29.   The court explained in *Koffman v. Leichfuss,* 2001 WI 111, ¶¶ 43, 45–46, 246 Wis. 2d 31, 630 N.W.2d 201, the relationship between the reasonable value of medical expenses, the rights of the injured person to recovery of the reasonable value of the medical expenses, and the subrogation rights of the injured person's health insurance company that paid the medical expenses:   "The creation of a subrogation interest in the insurer does not vest the entirety of the medical expense claim in the insurer. Nor does it extinguish the insured's right to

---

[20] *Lagerstrom v. Myrtle Werth Hosp.,* 2005 WI 124, ¶ 56, 285 Wis. 2d 1, 700 N.W.2d 201 (quoting *Koffman,* 246 Wis. 2d 31, ¶ 2).

[21] *Lagerstrom,* 285 Wis. 2d 1, 32. *See also Koffman,* 246 Wis. 2d 31, 29 (citing *Payne v. Bilco Co.,* 54 Wis. 2d 424, 433, 195 N.W.2d 641 (1972) (The collateral source rule prevents any payments made on the plaintiff's behalf or gratuitous benefits received by the plaintiff from inuring to the benefit of a defendant-tortfeasor.).

[22] *Ellsworth,* 235 Wis. 2d 678, ¶ 7 n.7.

recover amounts above and beyond those paid by the insurer. . . . Thus, recoverable medical expense damages may exist beyond that of the amount paid by the insurer, and the insured is entitled to pursue those amounts. . . . [T]he collateral source rule allows the plaintiff to seek recovery for the reasonable value of medical services without consideration of payments made by the plaintiff's insurer; and . . . the insurer's subrogation rights entitle it to recoup the amounts it paid on the plaintiff's behalf."[23]

¶ 30. The collateral source rule is also a rule of evidence.[24] As a rule of evidence, the collateral source rule generally precludes introduction of evidence regarding benefits a plaintiff obtained from sources collateral to the tortfeasor. A limited exception has been recognized when the evidence is offered for impeachment purposes.[25]

---

[23] The *Koffman* case distinguished *Lambert v. Wrensch,* 135 Wis. 2d 105, 399 N.W.2d 369 (1987), in which the insurer was barred from pursuing its subrogation rights. In the present case, Leitinger's health insurance company pursued its subrogation rights.

[24] *Fitzgerald v. Expressway Sewerage Constr., Inc.,* 177 F.3d 71, 73 (1st Cir. 1999) ("Implementation of the [collateral source rule] gives rise to an evidentiary analogue. This analogue customarily bars the introduction of proof of collateral source payments made to a plaintiff.").

For criticism of the collateral source rule as a rule of evidence because it keeps information from the fact-finder, see Joel K. Jacobsen, *The Collateral Source Rule and the Role of the Jury,* 70 Or. L. Rev. 523 (1991).

[25] *Hack v. State Farm Mut. Auto. Ins. Co.,* 37 Wis. 2d 1, 10, 154 N.W.2d 320 (1967).

¶ 31.   The collateral source rule, as a rule of damages and as a rule of evidence, is premised on certain policy goals. The collateral source rule is designed to protect plaintiffs.[26] Thus courts have allowed plaintiffs to recover the reasonable value of medical services even when those services have been paid for entirely by a collateral source and the plaintiff has made no out-of-pocket payments at all.[27] The collateral source rule protects plaintiffs by guarding against the potential misuse of collateral source evidence to deny the plaintiff full recovery to which he is entitled.[28]

[26] 2 Dan B. Dobbs, *Dobbs Law of Remedies: Damages, Equity, Restitution* § 8.6(3) at 495 (2d ed. 1993):

> In many instances of the collateral source rule it is possible to argue that the plaintiff paid for the benefit he is now receiving and that the defendant ought not benefit from the plaintiff's investment. Along with this, it is said that the collateral source rule encourages the plaintiff to protect himself by the purchase of insurance by making sure he reaps its value.

[27] The *Ellsworth* court, 235 Wis. 2d 678, ¶ 7, finds support for this argument as far back as a 1927 case, *Campbell v. Sutliff,* 193 Wis. 370, 214 N.W. 374 (1927), when the court recognized that any benefit resulting from the injury belongs to the plaintiff, not the one whose wrongful acts caused the injury. *See also* Restatement (Second) of Torts, § 920A (1977).

[28] *See, e.g., Loncar v. Gray,* 28 P.3d 928, 933 (Alaska 2001) ("The collateral source rule 'exclud[es] evidence of other compensation on the theory that such evidence would affect the jury's judgment unfavorably to the plaintiff on the issues of liability and damages.' "); *Olariu v. Marrero,* 549 S.E.2d 121, 123 (Ga. App. 2001) (presentation to the jury of payment of damages by a collateral source is prohibited); *Blessing v. Boy Scouts of Am.-Heart of Am. Council,* 608 S.W.2d 484, 489 (Mo. App. 1980) ("Evidence which shows that an injured party has received insurance payments is presumed to be prejudicial upon the concept that a tort-feasor is not permitted to receive the benefit

¶ 32. The collateral source rule ensures that the liability of similarly situated defendants is not dependent on the relative fortuity of the manner in which each plaintiff's medical expenses are financed.[29]

¶ 33. The collateral source rule, like other tort principles, also aims at deterring a tortfeasor's negli-

of insurance payments from another source. To permit such evidence would tend to deny to an injured party recovery of benefits to which he or she would be entitled from some other source"); *Proctor v. Castelletti,* 911 P.2d 853, 854 (Nev. 1996) (adopting per se rule barring admission of evidence of a collateral source of payment for an injury for any purpose; "There is an ever-present danger that the jury will misuse the evidence to diminish the damage award."); *Jurgensen v. Smith,* 611 N.W.2d 439, 442 (S.D. 2000) ("[A] plaintiff's collateral source of income 'cannot be inquired into as part of a defendant's case, because of the danger that the jury may be inclined to . . . reduce a damage award, when it learns that plaintiff's loss is entirely or partially covered.' ") (quoted source omitted); *Radvany v. Davis,* 551 S.E.2d 347, 348 (Va. 2001) ("[P]ayments made by a collateral source . . . are not admissible in evidence . . . ."); 1 Dan B. Dobbs, *Dobbs Law of Remedies: Damages, Equity, Restitution,* § 3.8(1) at 375 (2d ed. 1993) (one justification advanced for the collateral source rule is that "the introduction of evidence that the plaintiff received benefits is inherently prejudicial to the plaintiff").

A minority of courts has taken the position that regardless of the reasonable value of the medical services rendered, the amount actually paid is admissible and governs recovery of damages. *See, e.g., Moorhead v. Crozer Chester Med. Ctr.,* 765 A.2d 786 (Pa. 2001) (regardless of reasonable value, plaintiff's award limited to amount actually paid for medical services); *Hanif v. Housing Auth.,* 246 Cal. Rptr. 192, 195 (Cal. App. 1988) (plaintiff generally entitled only to amount actually paid for medical services so long as the amount is reasonable).

[29] *Koffman,* 246 Wis. 2d 31, ¶ 31.

gent conduct. Accordingly, it makes the tortfeasor fully responsible for damages caused as a result of tortious conduct.[30]

¶ 34. Although an injured person may experience double recovery when the collateral source rule is applied,[31] one recovery from the collateral source and a second recovery from the tortfeasor, the purpose of the collateral source rule is not to provide the injured person with a windfall, but rather to prevent the tortfeasor from escaping liability because a collateral source has compensated the injured person. The injured person, not the tortfeasor, benefits from the collateral source.[32]

---

[30] *Lagerstrom,* 235 Wis. 2d 678, ¶ 7. *See also* 3 *The Law of Damages in Wisconsin,* § 33.5 (2005). In the present case the tortfeasor is insured and Acuity, the insurer, will be paying damages on behalf of the tortfeasor, a responsibility for which the insurance company contracted. In some circumstances it may be against public policy to allow a tortfeasor to purchase insurance to cover a liability. In the present case, liability insurance is not against public policy.

[31] *See Voge v. Anderson,* 181 Wis. 2d 726, 732, 512 N.W.2d 749, 733 (1994) (allowing an injured party a double recovery). *See also* 2 Dan B. Dobbs, *Dobbs Law of Remedies: Damages, Equity, Restitution* § 8.6(3) at 493 (2d ed. 1993).

This "double recovery" is often an unfounded fear. "The collateral source rule works in conjunction with subrogation and reimbursement. Plaintiffs do not necessarily actually receive a double recovery even if they do collect fully from both the tortfeasor and the collateral source, because a collateral source may have a right of subrogation or reimbursement." *Lagerstrom,* 285 Wis. 2d 1, ¶ 62 (citing Dan B. Dobbs, *Dobbs Law of Remedies: Damages, Equity, Restitution* § 8.6 at 496 (2d ed. 1993)).

[32] *Lagerstrom,* 285 Wis. 2d 1, ¶ 57 (internal citations omitted); *Voge,* 181 Wis. 2d at 732. *See also* 3 *The Law of Damages in Wisconsin,* § 33.5 (2005).

### C

¶ 35. Two recent cases, *Ellsworth v. Schelbrock,* 2000 WI 63, 235 Wis. 2d 678, 611 N.W.2d 764, and *Koffman v. Leichfuss,* 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201, reaffirming the vitality of the collateral source rule, govern the present case.

¶ 36. In *Ellsworth,* the plaintiff was severely injured in an automobile accident and the Medical Assistance program paid medical expenses at an amount less than billed. The tortfeasor contended that the collateral source rule was inapplicable to the facts of the case and that the plaintiff's recovery for medical expenses should be limited to the amount paid by Medical Assistance.

¶ 37. Applying the collateral source rule to Medical Assistance benefits, the *Ellsworth* court held that the award for medical damages is not limited to the amount paid by the Medical Assistance program.[33] The court declared that a plaintiff's recovery for medical

---

[33] *Ellsworth,* 235 Wis. 2d 678, ¶ 22. The *Ellsworth* court reached its ruling by analyzing the policy goals underlying the collateral source rule. The court explained that the collateral source rule is designed to deter negligent conduct, a goal which is achieved by "placing the full cost of the wrongful conduct on the tortfeasor." *Id.,* ¶ 7 (citing *Am. Standard Ins. Co. v. Cleveland,* 124 Wis. 2d 258 (Ct. App. 1985)). "The tortfeasor who is legally responsible for causing injury is not relieved of his obligation to the victim simply because the victim had the foresight to arrange, or the good fortune to receive, benefits from a collateral source for injuries and expenses." *Id.* The court buttressed its reasoning by turning to a fundamental premise of the collateral source rule: If any party is to profit by the payments made by a collateral source, the person who has been injured, not the one whose wrongful acts caused the injury, should benefit. *Id.*

services is for the reasonable value of the services, not for the expenditures actually made or the obligations incurred.

¶ 38. The *Ellsworth* court not only addressed the damages aspect of the collateral source rule but also explored whether the amounts paid by Medical Assistance for medical services were the reasonable value of the medical services. The tortfeasor in *Ellsworth* argued that the amount paid by Medical Assistance represented, as a matter or law, the reasonable value of the medical services rendered to the plaintiff. The tortfeasor contended that, by statute, Medical Assistance payments are to be "the customary, usual and reasonable demand for payment . . . which does not exceed the general level of charges by others who render such service or care . . . ."[34] Three dissenting justices in *Ellsworth*, Justices Sykes, Wilcox, and Crooks, agreed that the proper measure of damages is not what would have been paid for the medical services (the amount billed) but what was actually incurred in the care and treatment of the plaintiff's injuries (the amount paid by Medical Assistance). The dissenting justices concluded that "the plaintiff's measure of damages in this case is that which Medical Assistance paid and the medical providers accepted as payment in full for the services rendered."[35]

¶ 39. The *Ellsworth* majority rejected the tortfeasor's invitation to treat the amounts paid by Medical Assistance as the reasonable value of the services.[36] Contrary to the dissenting justices' view, the

[34] *Ellsworth,* 235 Wis. 2d 678, ¶ 16 (quoting Wis. Stat. § 49.43(1)).

[35] *Ellsworth,* 235 Wis. 2d 678, ¶ 31 (Sykes, J., dissenting).

[36] *Id.,* ¶ 16.

majority ruled that the reasonable value of the medical services was not limited to or dictated by the amounts paid by Medical Assistance. The *Ellsworth* court explained:

> The collateral source rule seeks to place upon the tortfeasor full responsibility for the loss he has caused. [The defendant] is not entitled to reap the benefit of Ellsworth's eligibility for public assistance or from the government's economic clout in the health care market place. The reimbursement rate that is established by the state for health care providers participating in the Medical Assistance program is not dispositive. Ellsworth, as the party claiming damages, carries the burden to prove her medical expenses to a reasonable certainty, by the greater weight of credible evidence.[37]

They cautioned, however, in an footnote that "[w]e note, as did the court of appeals, that we are not addressing the situation where a provider of medical services charges less as part of an agreement to act as the exclusive provider of treatment as part of a managed care plan."[38]

¶ 40. Justice Prosser, a member of the *Ellsworth* majority, explained the *Ellsworth* decision in a dissent in a subsequent case as follows: "The *Ellsworth* majority held that the plaintiff was entitled to recover the higher amount, while the dissent concluded that the extra $250,000 reflected 'what the highest payor would have paid for the same medical services,' and thus yielded an unjustified windfall for the plaintiff."[39]

¶ 41. One year later in *Koffman*, the court was again faced with a question about the proper applica-

---

[37] *Id.,* ¶ 17.

[38] *Id.,* ¶ 6 n.1.

[39] *Lagerstrom,* 285 Wis. 2d 1, ¶ 130 (Prosser, J., dissenting).

tion of the collateral source rule in determining damages for medical services rendered in a personal injury action.

¶ 42. The plaintiff in *Koffman* was severely injured in an automobile accident and required extensive medical care, the cost of which was paid primarily by the plaintiff's insurance company. The amount billed for the medical treatment was $187,931.78, but because of "certain contractual relationships with the plaintiff's health care providers, [the plaintiff's insurance company] received the benefit of reduced 'contracted rates' and was able to satisfy its liability for the amounts billed by the providers with total payments of $62,324.00."[40]

¶ 43. The parties stipulated that the reasonable value of the medical services was the amount billed by the health care providers. The tortfeasor nevertheless argued that the plaintiff's recovery was limited, as a matter of law, to the amounts paid for the medical treatment. Agreeing with the tortfeasor, the circuit court reduced the jury's medical expense damage award to the amount actually paid.

¶ 44. The *Koffman* court examined the implications of the health care system in which an insurer's liability for medical expenses billed to an insured is often satisfied at discounted rates, with the remainder written off by the health care provider.[41] The *Koffman* court reasoned that the collateral source rule is specifically designed to prevent a discount received by a plaintiff's insurance company from affecting the plaintiff's recovery of the reasonable value of medical

---

[40] *Koffman*, 246 Wis. 2d 31, ¶ 4.

[41] *Id.*, ¶¶ 21–22.

services rendered.[42] It concluded that the reduced rates the plaintiff's health insurance company negotiated with the health care provider did not justify an exception to the collateral source rule. Rather, the collateral source rule allows the plaintiff to seek recovery of the reasonable value of medical services without consideration of gratuitous medical services rendered or payments made by outside sources on the plaintiff's behalf, even when made at reduced rates.

¶ 45.   The *Koffman* court explained as follows:

> Where the plaintiff's health care providers settle the plaintiff's medical bills with the plaintiff's insurer at reduced rates, the collateral source rule dictates that the defendant-tortfeasor not receive the benefit of the written-off amounts. The benefit of the reduced payments inures solely to the plaintiff.
>
> . . . .
>
> Despite the various insurance arrangements that exist in each case, the factor controlling a defendant's liability for medical expense is the reasonable value of the treatment rendered.[43]

¶ 46.   The *Koffman* court reached the following conclusions:

> 1. "[T]he plaintiff is entitled to seek recovery of the reasonable value of the medical services, without limitation to the amounts paid."[44]

---

[42] *Id.,* ¶ 32.

[43] *Id.,* ¶¶ 30–31 (footnotes and citations omitted). The *Koffman* court alluded that there might be situations, like impeachment, where this type of collateral source evidence may be admissible, but did not answer this question. *Koffman,* 246 Wis. 2d 31, ¶ 52 n.10.

[44] *Koffman,* 246 Wis. 2d 31, ¶ 2.

2. The collateral source rule "renders irrelevant the amounts of the collateral source payments . . . and precludes a reduction in medical expense damages based on those payments."[45]

3. Limiting medical expense damages to the amounts actually paid "is contrary to the rule of valuation of medical expense damages, the collateral source rule, and principles of subrogation . . . ."[46]

4. "Applying the collateral source rule to payments that have been reduced by contractual arrangements . . . assures that the liability of similarly situated defendants is not dependent on the relative fortuity of the manner in which each plaintiff's medical expenses are financed."[47]

¶ 47. Most important to our review in the instant case, the *Koffman* court stated that evidence of the amounts actually paid by the plaintiff's health care insurance company is inadmissible in the absence of a separate basis for the relevance of this collateral source evidence.[48]

¶ 48. The *Ellsworth* and *Koffman* decisions leave no doubt that the tortfeasor is not to benefit from the fact that the medical services provider was paid less by a collateral source than the amount billed. If evidence of the collateral source payments were admissible, even for consideration of the reasonable value of the medical treatment rendered, a plaintiff's recovery of medical expenses would be affected by the amount actually paid by a collateral source for medical services. Such a

---

[45] *Id.,* ¶ 32.

[46] *Id.,* ¶ 47.

[47] *Id.,* ¶ 31.

[48] *Id.,* ¶ 52.

"limitation" on the plaintiff's damages contravenes the view of the collateral source rule stated in *Ellsworth* and *Koffman.*

¶ 49. Acuity offers several arguments why the instant case does not involve the collateral source rule and why *Ellsworth* and *Koffman* are inapposite. None of the arguments is persuasive.

¶ 50. First, Acuity contends that *Ellsworth* and *Koffman* are inapposite because in those cases no question was raised about the reasonable value of the medical treatment rendered. According to Acuity, in *Ellsworth* and *Koffman,* the court applied the collateral source rule to the ultimate award of damages, not to the question of the reasonable value of the medical treatment. Acuity is wrong to conclude that the rule established in those cases does not extend to the present case.

■

¶ 51. Our holdings and discussions in *Ellsworth* and *Koffman* set forth a proposition of law that applies to the present case: A plaintiff in a personal injury tort action is entitled to seek recovery of the reasonable value of medical treatment without limitation to the amount paid by a collateral source for the medical treatment.

¶ 52. Second, Acuity argues that because it seeks to introduce as evidence only the amount actually paid for medical treatment, and not the source of these compromised payments, and does not seek to reduce damages by the amount of the collateral source payments, it is doing no violence either to the collateral source rule or to *Ellsworth* and *Koffman.* The South Carolina Supreme Court evaluated an argument similar to Acuity's. The court declared that "[w]hile facially

appealing, this argument ignores the reality that unexplained, the compromised payments would in fact confuse the jury. Conversely, any attempts on the part of the plaintiff to explain the compromised payment would necessarily lead to the existence of a collateral source."[49] The South Carolina Supreme Court held that the collateral source rule is directly implicated and that a party cannot introduce evidence of the actual payment by a collateral source to challenge the reasonableness of the plaintiff's medical expenses.

¶ 53.   Although claiming that the evidence assists the fact-finder in determining the reasonable value of the medical treatment and does not limit or reduce the damages, Acuity, in essence, is seeking to do indirectly what it cannot do directly, that is, it is seeking to limit Leitinger's award for expenses for medical treatment by introducing evidence that payment was made by a collateral source. Acuity ignores the fact that the collateral source rule protects against the "ever-present danger that the jury will misuse the evidence [of collateral payments] to diminish the damage award."[50] Acuity is trying to circumvent the collateral source rule.

¶ 54.   The collateral source rule prevents the fact-finder from learning about collateral source payments, even when offered supposedly to assist the jury in determining the reasonable value of the medical treatment rendered, so that the existence of collateral source payments will not influence the fact-finder.[51]

---

[49] *Covington v. George,* 597 S.E.2d 142, 144–45 (S.C. 2004).

[50] *Proctor v. Castelletti,* 911 P.2d 853, 854 (Nev. 1996).

[51] "The entire theory of the collateral source rule is to keep the jury from learning anything about the collateral income so

¶ 55. Third, Acuity narrowly focuses on paragraph 52 in the *Koffman* decision, arguing that the court recognized that the amount actually paid by a third party is a relevant factor in calculating the reasonable value of medical services.

¶ 56. Paragraph 52 of the *Koffman* decision states as follows:

> Here, the evidence of the amounts paid by the plaintiff's insurers was inadmissible. As a consequence of the parties' stipulation to the reasonableness of amounts billed by the health care providers, the sole issue for the jury to determine was the amount of medical expense damages caused by the defendants' negligence. The amounts paid by the plaintiff and his insurers were irrelevant to the determination of the causal link between the treatment and the injury. In the absence of a separate basis for the relevance of this collateral source evidence, evidence of such payments should have been deemed inadmissible.[52]

An accompanying footnote reads as follows: "Because the reasonableness of the amounts billed by the plaintiff's health care providers was the subject of the parties' stipulation, it cannot be said that the defendant's presentation of this evidence was material to the valuation of those expenses in this case."[53]

¶ 57. Acuity argues that paragraph 52 means that the reasonable value of medical services is a separate basis for admitting evidence of the collateral source payment. The *Koffman* court cites only one case as an exception to the collateral source rule: *Hack v. State Farm Mutual Automobile Insurance Co.,* 37 Wis. 2d 1,

---

that it will not influence the decision of the jury." *Wolfe v. Whipple,* 251 N.E.2d 77, 82 (Ill. App. 1969).

[52] *Koffman,* 246 Wis. 2d 31, ¶ 52.

[53] *Id.,* ¶ 52 n.10

154 N.W.2d 320 (1967). In *Hack,* evidence of collateral source payments was admissible to impeach the credibility of the plaintiff. We need not address whether other exceptions to the collateral source rule exist. We need only decide, and do decide, that *Koffman* does not support an exception to the collateral source rule when the evidence is used to determine the reasonable value of the medical treatment.

¶ 58. The *Koffman* court did not hold in this passage that collateral source evidence is admissible for valuation purposes. The *Koffman* court was simply acknowledging that under the circumstances of the case in which the parties stipulated that the amount billed was the reasonable value of the medical treatment, no one could argue that the amount actually paid was admissible to prove the reasonable value.

¶ 59. The sole purpose of Acuity's presentation of the evidence of the amount actually paid by a collateral source is to reduce the award for medical expenses to this payment, a result that is exactly what the *Koffman* court said the collateral source rule is designed to combat.[54] Acuity attempts to extrapolate too much from paragraph 52 in *Koffman.* The passage upon which Acuity relies cannot be read to overrule the clear holding of *Koffman.*

¶ 60. Fourth, Acuity attempts to distill from paragraph 27 in the *Koffman* decision the rule that the actual amount paid by a collateral source is admissible for the purpose of determining the reasonable value of medical services. In paragraph 27, the *Koffman* court stated as follows:

> In Wisconsin, a plaintiff who has been injured by the tortious conduct of another may recover the reasonable

[54] *Id.,* ¶ 53.

value of medical services rendered. . . . [W]e [have] explained that while the actual amount paid for medical services *may* reflect the reasonable value of the treatment rendered, the focus is on the reasonable value, not the actual charge.[55]

¶ 61.   Once again, we disagree with Acuity's interpretation of *Koffman*. This passage is silent about the effect of the collateral source rule. In the quoted passage, the *Koffman* court elucidated the well-accepted standard for valuation of medical services.

¶ 62.   Acuity reads too much into this isolated passage and reads it out of context, ignoring the overall premise of *Koffman:* the collateral source rule operates to ensure that a plaintiff may recover the reasonable value of medical services rendered without being limited to the amount actually paid by a collateral source.

¶ 63.   Fifth, Acuity argues that even if the collateral source rule bars introduction of evidence of amounts actually paid for medical services, this court modified the collateral source rule in *Lagerstrom* to permit introduction of evidence of collateral source payments.

¶ 64.   In *Lagerstrom,* the court considered the admissibility of collateral source payments in a medical malpractice action governed by Wis. Stat. § 893.55(7) (2001–02).[56] This statute explicitly allows evidence of collateral source payments to be introduced in medical

---

[55] *Id.,* ¶ 27 (emphasis added).

[56] Wisconsin Stat. § 893.55(7) (2001–02) provides in pertinent part:

> Evidence of any compensation for bodily injury received from sources other than the defendant to compensate the claimant for the injury is admissible in an action to recover damages for medical malpractice. This section does not limit the substantive or procedural rights of persons who have claims based upon subrogation.

malpractice actions but fails to state the purpose for which the evidence may be admitted. After reviewing the statutory text, its legislative history, its legislative goal, and common-law concepts, the *Lagerstrom* court concluded that the statute requires that the fact-finder be instructed that it may consider the collateral source payments in determining the reasonable value of medical services, but must not reduce the reasonable value of medical services by the amount of the collateral source payments.[57] The court also reasoned that if evidence of the collateral source payments is presented to the fact-finder, then the parties must be allowed to furnish the jury with evidence of any obligations of subrogation or reimbursement.[58]

¶ 65.   Acuity relies on *Lagerstrom* to conclude that evidence of the amount actually paid by an insurance company is relevant and admissible evidence and accordingly that "evidence of collateral source payments may be used by the jury to determine the reasonable value of medical services."[59] Acuity's arguments are off the mark. *Lagerstrom* cannot be read so broadly as to apply to the facts of this case.

¶ 66.   The court in *Lagerstrom* observed that Wis. Stat. § 893.55(7) did not abrogate the collateral source rule. Rather, the statute was a modification of the rules of evidence in medical malpractice cases.[60] Attorneys

All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[57] *Lagerstrom,* 285 Wis. 2d 1, ¶ 5.

[58] *Id.*

[59] *Id.*

[60] The *Lagerstrom* court explained that "[w]e conclude that the text of § 893.55(7) explicitly allows evidence of collateral source payments to be introduced *in medical malpractice ac-*

141

Webster A. Hart and Stephanie L. Finn in 3 *The Law of Damages in Wisconsin* § 33.6 (2005) properly summarize the impact of Wis. Stat. § 893.55(7) by stating that, *"but for"* the existence of section 893.55(7), the collateral source rule would prohibit juries from hearing evidence of the amounts received from other sources.

¶ 67.   Sixth, Acuity argues that the amounts billed by health care providers are "fantasy," "arbitrary," and "random" figures that have no correlation to the reasonable value of the medical services actually provided. Acuity insists that the "reality rate," that is, the amount actually paid, is the true measure of the reasonable value of the medical services to be considered by the fact-finder in determining the reasonable value of medical services rendered.[61]

¶ 68.   Acuity may be correct that a significant difference frequently exists between the amount billed and the amount actually paid for medical services. The amount actually paid for medical services may include substantial "discounts," as illustrated here and in *Koffman.* The *Koffman* court reviewed factors that contribute to the discounted amounts that health insurance

---

*tions."* 285 Wis. 2d 1, ¶ 74 (emphasis added). Medical malpractice actions are a special type of tort action governed by Wis. Stat. ch. 655.

[61] As support for this notion of "fantasy rates," Acuity points to *Dorr v. Sacred Heart Hospital,* 228 Wis. 2d 429, 597 N.W.2d 462 (Ct. App. 1999). The *Dorr* case demonstrates that HMOs and health insurance providers are able to contract for discounted services, arranging benefits for their subscribers at a reduced rate. In *Dorr,* the parties established a contractual relationship that was binding under the law. Because the hospital violated the terms of this arrangement, the court of appeals held that the hospital was liable for conversion and tortious interference with the patients' health insurance contract.

companies pay for medical services, such as volume and guaranteed payment. We recognized the sources of these "discounts" in *Koffman* as follows:

> The modern health care system employs a myriad of health care finance arrangements. As part of the system, negotiated and contracted discounts between health care providers and insurers are increasingly prevalent. Pursuant to these agreements, an insurer's liability for the medical expenses billed to its insured is often satisfied at discounted rates, with the remainder being "written-off" by the health care provider.[62]

¶ 69.  Acuity nonetheless asserts that the *Koffman* court was mistaken in characterizing the difference between the amount paid and the amount billed as a "discount." Acuity explains that reimbursement rates are not "discounts" and instead are typically determined by each health insurance company pursuant to "usual, customary, and reasonable charges or prevailing rates in the community," as required by law.[63]

¶ 70.  We disagree with Acuity. The *Ellsworth* court refused to accept a similar argument made by the tortfeasor in that case and concluded that the amount established by the state for health care providers participating in the Medical Assistance program is not dispositive of reasonable value, even though the statute defines the charge for Medical Assistance as "the customary, usual and reasonable demand for payment."

---

[62] *Koffman,* 246 Wis. 2d 31, ¶ 21.

[63] Acuity cites Wis. Admin. Code INS § 3.60 regarding setting customary, usual, and reasonable charges.

For a discussion of using a discount or write-off to prove the charges are unreasonably high, see 2 Dan B. Dobbs, *The Law of Torts* § 380 at 1060 (2006 pocket part at 149–50).

¶ 71. The evidence Acuity proffers will not assist the fact-finder as Acuity claims, because a particular health insurance company's negotiated rates with a health care provider are not necessarily relevant evidence of the reasonable value of the medical services in a tort action.[64]

¶ 72. The reimbursement rate of a particular health insurance company generally arises out of a contractual relationship and reflects a multitude of factors related to the relationship of the insurance company and the provider, not just to the reasonable value of the medical services.[65]

---

[64] For support for the proposition that evidence of the amount actually paid is admissible to prove the reasonable value of the medical treatment rendered, Acuity cites to *Lautenschlager v. Hamburg*, 41 Wis. 2d 623, 630, 165 N.W.2d 129 (1969) (" 'The amount paid or liability incurred is merely evidence which can go to the jury to assist it in arriving at a reasonable award.' ") (quoted source omitted).

*Lautenschlager* sheds little light on the issue before the court. In *Lautenschlager*, the jury awarded only $1,000 in damages although the plaintiff submitted bills that totaled $1,562. Upon appeal, the court examined the adequacy of the award, deciding whether there was credible evidence to support it. The court concluded that "[u]pon a review of the evidence, it is apparent that some medical bills were admitted into evidence with little or no testimony to support the necessity for the services in relation to the injuries sustained . . . ." 41 Wis. 2d 623, 630. The issue was one of failure of proof by the plaintiff and not the application of the collateral source rule. The *Lautenschlager* court did not even refer to the collateral source rule.

[65] The Supreme Court of Virginia in *Radvany v. Davis*, 551 S.E.2d 347 (Va. 2001), when faced with the same issue, likewise concluded that the amounts accepted by the plaintiff's health care providers are not evidence of whether the medical bills are reasonable in amount. "The amounts accepted . . . represent

144

¶ 73. The admission in evidence of the amount actually paid in the present case, even if marginally relevant,[66] might bring complex, confusing side issues before the fact-finder that are not necessarily related to the value of the medical services rendered.[67] Accord-

amounts agreed upon pursuant to contractual negotiations undertaken in conjunction with [the plaintiff's] health insurance policy. Such negotiated amounts, presumably inuring to the benefit of the medical providers, the insurance carrier, and [the plaintiff], do not reflect the 'prevailing cost' of those services to other patients." *Radvany,* 551 S.E.2d at 348. Accordingly, the Supreme Court of Virginia held that "such amounts are not evidence of whether the medical bills are 'reasonable, i.e., not excessive in amount, considering the prevailing cost of such services' " (internal citations omitted). *Id.*

We explained in *Koffman* that the cost of medical treatment for plaintiffs with the same injury may vary depending on how each plaintiff's medical expenses are financed. "One plaintiff may be uninsured and receive the benefit of Medical Assistance, another's insurer may have paid full value for the treatment, and yet another's insurer may have received the benefit of reduced contractual rates." *Koffman,* 246 Wis. 2d 31, ¶ 31. The "reasonable value of the treatment rendered" was not contingent upon "the various insurance arrangements that exist in each case." *Id.*

[66] In *Lagerstrom,* this court recognized that the legislature decided in enacting Wis. Stat. § 893.55(7) that evidence of collateral source payments may be relevant to determining the reasonable value of medical services. *Lagerstrom,* 285 Wis. 2d 1, ¶¶ 5, 76.

Professor Dobbs comments that standing alone, the probative value of the amount actually paid to show "true" value "is rather weak." He further comments, however, that if a provider routinely writes off a fixed percentage of its bills, "that fact plus other evidence may suffice to raise doubts about the reasonableness of the billed charges." 2 Dan B. Dobbs, *The Law of Torts* § 380 at 1060 (2006 pocket part at 149–50).

[67] *See* Wis. Stat. §§ 904.01, 904.03.

ingly, Acuity errs in insisting that the amount actually paid by a collateral source in the present case is a factor for the fact-finder in determining reasonable value of those services. The truth-seeking function of a trial is assisted, not perverted, by applying the collateral source rule and excluding the amount actually paid by a collateral source in the present case.

¶ 74.   In sum, we are not persuaded by Acuity's arguments that the collateral source rule is not applicable or that *Ellsworth* and *Koffman* do not govern the instant case.

* * * *

■

¶ 75.   For the reasons set forth, we affirm the decision of the court of appeals. We hold, as did the court of appeals, that the collateral source rule prohibits parties in a personal injury action from introducing evidence of the amount actually paid by a collateral source for medical treatment rendered to prove the reasonable value of the medical treatment. We therefore remand this cause to the circuit court for proceedings consistent with this decision and the parties' stipulations.

¶ 76.   *By the Court.*—The decision of the court of appeals is affirmed.

¶ 77.   PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). Joseph Leitinger was injured during the course of his employment. His health care providers billed him $154,818.51 for the medical care he received. However, his insurer paid only $111,394.73 to settle the bills in full. No one has paid, or will ever pay, the $43,424.78 difference between the billed amount and

the paid amount. It is beyond question that under the facts of this case Leitinger is entitled to a damage award that includes the reasonable value of the medical care he received. The question presented here is whether a circuit court must limit the evidence that a jury can hear as the jury determines the reasonable value of an injured party's medical care.

¶ 78. The majority opinion concludes that "the collateral source rule prohibits parties in a personal injury action from introducing evidence of the amount actually paid by the injured person's health insurance company, a collateral source, for medical treatment rendered to prove the reasonable value of the medical treatment." Majority op., ¶ 7. In so doing, (1) it provides damages to Leitinger that are no longer compensatory damages because they exceed the amount necessary to make him whole; (2) it causes the relevancy of evidence to turn on who pays for the medical care provided, rather than on the relationship of the evidence to the reasonable value of the medical care provided, i.e., a fact the jury must determine; and (3) it usurps the jury's fact-finding function by hiding relevant evidence from the jury while at the same time presenting it with misleading evidence that implies that the billed amount is the cost of the medical care provided. Because I conclude that the majority opinion extends the collateral source rule too far, I respectfully dissent.

## I. BACKGROUND[1]

¶ 79. Leitinger was injured in a construction-related accident while employed by his own company,

---

[1] The factual and procedural backgrounds of this case are undisputed for purposes of this review.

Services Unlimited. His insurance company paid $43,424.78 less than the amount billed to satisfy all of the charges for the medical care he received.

¶ 80. At trial, Acuity, who provided liability insurance to various defendants, did not stipulate that the amount that was billed is the reasonable value of the medical care provided, as the insurer had in *Koffman v. Leichtfuss*, 2001 WI 111, ¶ 7, 246 Wis. 2d 31, 630 N.W.2d 201. Acuity introduced the amount actually paid for Leitinger's medical care as evidence relevant to the jury's determination of the reasonable value of his medical care.[2] The circuit court permitted expert testimony on the reasonable value of Leitinger's medical care, as well. The jury awarded $111,394.73, the amount actually paid for the medical care.

¶ 81. Leitinger appealed, and the court of appeals reversed, concluding that the collateral source rule prohibited presentation of evidence of the amount paid by Leitinger's insurance company. *Leitinger v. Van Buren Mgmt., Inc.*, 2006 WI App 146, ¶ 1, 295 Wis. 2d 372, 720 N.W.2d 152. We granted Acuity's petition for review.

## II. DISCUSSION

### A. Standard of Review

¶ 82. A circuit court's decision to admit or deny admission of proffered evidence is a discretionary determination. *State v. Cofield*, 2000 WI App 196, ¶ 7, 238 Wis. 2d 467, 618 N.W.2d 214. However, we determine as

---

[2] Leitinger objected to the admission of this evidence, but the circuit court agreed that the evidence was relevant to a question the jury was to decide. Therefore, the amount paid for Leitinger's medical care was before the jury.

148

a question of law whether the evidence that was admitted or excluded is relevant to a factual determination the jury must make. *See Barrera v. State,* 99 Wis. 2d 269, 279, 298 N.W.2d 820 (1980). In the case before us, the collateral source rule is implicated in the circuit court's evidentiary ruling. The scope of the collateral source rule is a question of law that we address independently of the decisions of other courts, but aided by their analyses. *Ellsworth v. Schelbrock,* 2000 WI 63, ¶ 6, 235 Wis. 2d 678, 611 N.W.2d 764.

B. Relevant Evidence

¶ 83. As a general principle, relevant evidence is admissible. *State v. Eugenio,* 219 Wis. 2d 391, 411, 579 N.W.2d 642 (1998). Wisconsin Stat. § 904.01 (2001–02)[3] provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, the admission of relevant evidence may be precluded by constitution, statute or court rule. Wis. Stat. § 904.02. The collateral source rule is a court-made rule. *Cunnien v. Superior Iron Works Co.,* 175 Wis. 172, 188, 184 N.W. 767 (1921).

C. The Collateral Source Rule

¶ 84. The collateral source rule began as a substantive rule of damages wherein the amount due to an injured party could not be reduced by amounts paid to or on behalf of an injured party by a collateral source. *Id.* In *Cunnien,* we concluded that the lower court erred

---

[3] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

in reducing the amount of Cunnien's damages by the $1,500 that his employer had paid him as salary while he was unable to work due to his injuries. *Id.*

¶ 85.   Under the collateral source rule, an injured plaintiff may seek as part of his damages the reasonable value of medical care provided, without a deduction for payments made for those services by collateral sources. *Ellsworth,* 235 Wis. 2d 678, ¶ 9. The collateral source rule "prevents payments made by the insure[r of the injured party] from inuring to the benefit of the defendant, and the insurer's subrogation rights prevent a double recovery on the part of the plaintiff." *Koffman,* 246 Wis. 2d 31, ¶ 40.

¶ 86.   Over the years, the collateral source rule has taken on an evidentiary character, in addition to its being a substantive rule of damages. *Id.,* ¶ 52. It has been used to prevent, or overrule, the admission of evidence of payments by a collateral source. *Id.*

¶ 87.   In *Koffman,* the defendant stipulated[4] that the amount billed by Koffman's medical care providers was reasonable. *Id.,* ¶ 7. Therefore, we concluded that the admission of the amount actually paid to the medical care providers was "irrelevant" to determining the reasonable value of the medical care provided. *Id.,* ¶ 53. Accordingly, we concluded that the amount paid was not admissible. *Id.*

¶ 88.   While the collateral source rule is grounded in requiring a tortfeasor to pay all the damages that resulted from his tortious conduct and ensuring that he does not benefit from collateral payments made to

---

[4] This stipulation affected the reasoning in our decision because we did not explain why the collateral source rule, which had heretofore been applied to payments made on behalf of the injured party, could now be applied to non-payments.

compensate for injuries he caused, *id.,* ¶ 29, it is also grounded in the collateral payer's rights of subrogation that keep a plaintiff from a double recovery for a single injury, *id.,* ¶ 33. We explained in *Koffman:* "[I]f the [plaintiff's] insurer is barred from exercising its subrogation rights, the plaintiff's recovery of the reasonable value of medical expenses would simply be reduced by the amounts paid on his behalf in order to prevent a double recovery." *Id.,* ¶ 41.

¶ 89.   Our explanation about preventing a double recovery for a single injury while employing the collateral source rule in *Koffman* is consistent with our earlier statements in *Voge v. Anderson,* 181 Wis. 2d 726, 732, 512 N.W.2d 749 (1994) and *Lambert v. Wrensch,* 135 Wis. 2d 105, 121, 399 N.W.2d 369 (1987), as we explained in *Koffman.* There, we reaffirmed that if the collateral payer is barred from pursuing a subrogation claim for its payment, the tortfeasor is entitled to a reduction in the judgment for that collateral payment. *Koffman,* 246 Wis. 2d 31, ¶ 39 (explaining that "[i]n *Voge v. Anderson,* we properly characterized *Lambert* as holding that 'where the [plaintiff's] insurer is barred from pursuing a claim [of subrogation], the tortfeasor is entitled to a reduction in judgment for the amount of that claim' "). Therefore, the collateral source rule does not always prevent a reduction in a plaintiff's award of damages for amounts paid by a collateral source, nor are such payments always inadmissible evidence. *See also Hack v. State Farm Mut. Auto. Ins. Co.,* 37 Wis. 2d 1, 10, 154 N.W.2d 320 (1967) (concluding that evidence of a collateral source payment is admissible for purposes of impeachment).

¶ 90.   The majority opinion asserts, contrary to Wisconsin law, that there are times when the collateral source rule permits double recoveries by an injured

party. Majority op., ¶ 34 (stating that "an injured person may experience double recovery when the collateral source rule is applied, one recovery from the collateral source and a second recovery from the tortfeasor"). The majority opinion cites Dan B. Dobbs, *Dobbs Law of Remedies: Damages, Equity, Restitution* § 8.6 at 496 (2d ed. 1993) as support for its assertion, but *Dobbs* does not support the majority opinion. Rather, *Dobbs* explains that a plaintiff *does not* receive a double recovery because of the subrogation and reimbursement rights that are held by the collateral payers. *Id.* In Wisconsin, as we recently reaffirmed in *Koffman,* an injured party *is not* entitled to a double recovery for a single injury under the collateral source rule: "[I]f the insurer is barred from exercising its subrogation rights, the plaintiff's recovery of the reasonable value of medical expenses would simply be reduced by the amounts paid on his behalf in order to prevent a double recovery." *Koffman,* 246 Wis. 2d 31, ¶ 41.

¶ 91.  Furthermore, as its name demonstrates, the collateral source rule applies to payments only if they are made by a "collateral" source. That is, the source of payment must be collateral to the tortfeasor. The majority opinion recognizes this legal principle. Majority op., ¶ 26.

¶ 92.  Therefore, if the tortfeasor or the tortfeasor's insurer pays for the medical care provided to the injured party, their payments would not be governed by the collateral source rule because a payment from either the tortfeasor or his liability insurer would not be from a "collateral" source. Restatement (Second) Torts § 920A(2) (1977). Accordingly, the collateral source rule would not prevent the amount paid by a tortfeasor or by the tortfeasor's insurer for a plaintiff's medical care from being presented to the jury

as evidence of the reasonable value of the medical care, even if a larger amount had been billed for the care than was paid for it.

D. Effects of the Majority Opinion

¶ 93.   The jury awarded Leitinger $43,424.78 less than the amount he was billed for the medical care he received. No one has paid this $43,424.78 on his behalf. The collateral source rule, whether a substantive rule of damages or an evidentiary rule relating to what evidence is relevant to a determination of the reasonable value of medical care provided to an injured plaintiff, is grounded in two principles:   (1) the collateral payments must not provide a double recovery for a single injury and (2) any collateral payments made to or on behalf of an injured plaintiff should not reduce the amount the tortfeasor will be required to pay to compensate for the injury he caused. *Koffman,* 246 Wis. 2d 31, ¶¶ 29, 41. The majority opinion cuts against both principles.

¶ 94.   The first principle—not providing a double recovery for a single injury—is driven by the policy that an injured party is entitled to be made whole by compensatory damages, but not more than whole. *White v. Benkowski,* 37 Wis. 2d 285, 290, 155 N.W.2d 74 (1967). There are only two occasions under Wisconsin law for which an injured party receives damages that exceed damages sufficient to make him whole:   first, when punitive damages are awarded to punish the wrongdoer, *id.,* or second, when the legislature establishes a statutory right of recovery that exceeds a plaintiff's compensatory damages. *See, e.g.,* Wis. Stat. § 133.18 (awarding treble damages for violations of Wisconsin antitrust laws). "The sole object of compensatory damages is to make the injured party whole for

losses actually suffered; the plaintiff cannot be made more than whole, make a profit, or receive more than one recovery for the same harm." 22 Am Jur. 2d *Damages* § 28.

¶ 95. Here, the majority opinion employs the collateral source rule to provide damages that are greater than those that will make Leitinger whole; however, no punitive damages were awarded and no statute afforded a recovery in addition to compensatory damages. The majority opinion simply gives Leitinger a double recovery for part of the reasonable value of the medical care provided, contrary to established precedent. *Koffman,* 246 Wis. 2d 31, ¶ 41; *Voge,* 181 Wis. 2d at 732; *Lambert,* 135 Wis. 2d at 121.

¶ 96. In so doing, the majority opinion creates a new category of damages, without acknowledging what it is doing. It does so by unnecessarily expanding the evidentiary component of the collateral source rule to prohibit the jury from hearing what was actually paid to cover all of Leitinger's medical care bills while admitting evidence of what was billed, even though no one will ever pay that amount.

¶ 97. This new rule of evidence, which will be applied to cases where the plaintiff's insurance company pays the medical care bills, cannot be applied to preclude the admission of the same evidence of payment when a tortfeasor's insurer pays for the medical care. This is so because a payment from the tortfeasor's insurer is not a payment from a collateral source. Therefore, the majority opinion will produce inconsistent evidentiary rulings, where the admissibility of evidence will not depend on whether the evidence is actually relevant to the reasonable value of the medical care provided to an injured person, i.e., a fact that a jury must find, but rather, it will depend on who pays for the

medical care. Facilitating such inconsistent evidentiary rulings should be a red flag to the majority opinion that it goes too far in its extension of the collateral source rule.

¶ 98. As I have explained above, Leitinger will never have to pay the amount billed, nor will anyone else. However, it does not follow that there is no cost to anyone for the $43,424.78 that Leitinger will collect. Liability insurance premiums will rise to cover this new wrinkle in damages that a liability insurer will be required to pay, even though a jury decided that these amounts are not needed to fully compensate the injured party. And query, if the amount billed is actually the reasonable value of the medical care provided, shouldn't it be paid to the persons who provided that care, as it is they who have not been fully compensated?

¶ 99. The majority opinion also implies throughout that the collateral source rule has been employed without exception any time there is a payment from a collateral source. However, our decisions in *Koffman, Voge* and *Lambert* show that is not correct. I recognize that in *Koffman* we said that "[w]here the plaintiff's health care providers settle the plaintiff's medical bills with the plaintiff's insurers at reduced rates, the collateral source rule dictates that the defendant-tortfeasor not receive the benefit of the written-off amounts." *Koffman,* 246 Wis. 2d 31, ¶ 30. However, we reached this conclusion after the defendants stipulated that the amount billed was the reasonable value of the medical services provided. *Id.,* ¶ 7. Acuity made no such stipulation here.

¶ 100. Furthermore, the statement at ¶ 30 of *Koffman* that is quoted immediately above must be read in the context of the issue we now face, i.e., can the jury consider the amount paid—together with any other

relevant evidence the parties care to present—as it decides the reasonable value of the medical care provided to Leitinger? With no stipulation from Acuity that the amount billed for the medical care is reasonable, there is nothing to support the conclusion that the amount billed is any more relevant to a determination of the reasonable value of the medical care provided than is the amount paid for that care. I favor letting the jury decide jury questions. As has been explained:

> [C]oncealing relevant information from the jury does not further the legitimate purpose of the collateral source rule. . . . It serves no principled purpose for courts to diminish the jury's role through a judge-made policy of concealment. Other rules of damages are imparted to the jury through instructions from the court; courts should treat the collateral source rule in the same way.

Joel K. Jacobsen, *The Collateral Source Rule and the Role of the Jury,* 70 Or. L. Rev. 523, 541 (1991).

¶ 101. There is an additional reason why the amount paid should not be excluded from evidence a jury can consider while the amount billed is admitted. It has been said that the amount billed for medical expenses has become a fictitious amount. *See* Jacobsen, supra; John Dewar Gleissner, *Proving Medical Expenses: Time for a Change,* 28 Am. J. Trial Advoc. 649 (2005); Robert Hernquist, *Arthur v. Catour: An Examination of the Collateral Source Rule in Illinois,* 38 Loy. U. Chi. L.J. 169 (2006).

> If the higher stated medical bill, an amount that never was and never will be paid, is admitted without evidence of the lower reimbursement rate, the jury is basing their verdict on "mere speculation or conjecture." The difference between the stated bill and the paid charges . . . is purely fictional as a true charge.

Gleissner, 28 Am. J. Trial Advoc. at 656.

## III. CONCLUSION

¶ 102. Therefore, I conclude that the majority opinion extends the collateral source rule too far, and in so doing: (1) it provides damages to Leitinger that are no longer compensatory damages because they exceed the amount necessary to make him whole; (2) it causes the relevancy of evidence to turn on who pays for the medical care provided, rather than on the relationship of the evidence to the reasonable value of the medical care provided, i.e., a fact the jury must determine; and (3) it usurps the jury's fact-finding function by hiding relevant evidence from the jury while at the same time presenting it with misleading evidence that implies that the billed amount is the cost of the medical care provided. Accordingly, I respectfully dissent.

¶ 103. I am authorized to state that Justice DAVID T. PROSSER joins in this dissent.