**Jeri L. LUCIER, Appellant,**

v.

**STEINER CORPORATION, American Linen and John Oliva, Appellees.**

**No. S–11192.**

Supreme Court of Alaska.

July 2, 2004.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

### Order

The petition for review, filed on 8/25/03 and granted on 10/21/03, is DISMISSED as improvidently granted.[1]

FABE and CARPENETI, Justices, dissenting.

A denial of a petition for review of an interlocutory order does not mean that we either approve or disapprove of the order sought to be reviewed, but merely that we decline to pass judgment at all on the action of the trial court. Furthermore, denial of review signifies that the

---

11. *Cf. Grow,* 860 P.2d at 1227.

1. In *Contento v. Alaska State Housing Authority,* 398 P.2d 1000, 1001 (Alaska 1965), this court stated in the context of a denial of a petition for review:

FABE, Justice, with whom CARPENETI, Justice, joins, dissenting.

I disagree with the court's decision to dismiss the petition for review as improvidently granted. Our original decision to accept review was correct and fulfilled the principal purpose of undertaking review of a non-final and unappealable order under Appellate Rule 402. The superior court's order "involves an important question of law on which there is substantial ground for difference of opinion,"[2] and deciding the issue at this time will prevent "injustice because of impairment of a legal right, or because of unnecessary delay, expense, [and] hardship."[3]

Jeri Lucier, the plaintiff in this case, was covered by Medicaid. Following an accident, Medicaid paid her medical providers only a small fraction of the amount they billed. The trial court ruled that in proving the value of her past medical expenses, Lucier will be limited to the actual amount paid by Medicaid, rather than the value that her providers placed on their services. Under the superior court's order, the jury will be given only the discounted value of Lucier's care as part of her damages case. In effect, before the jury's award has even been made, the trial court has offset it by the amount billed but unpaid. In my view, this ruling is erroneous, both substantively and procedurally, and the court should correct the errors before the parties incur the considerable expense of trial.

By deferring our decision on the merits of the question before us, we place the parties and the trial court at risk of retrying the entire damages portion of this case. Even before we granted the petition for review, the superior court granted a stay of its decision to allow for filing of the petition, recognizing that its ruling touched on "a significant question of first impression in the State of Alaska [on] which there is a division in other states . . . and [on which] our Supreme Court hasn't given us any guidance." The superior court realized that if it were ultimately reversed on its decision to limit past medical damages to the amount actually paid by Medicaid, it would "be redoing the entire damage trial, in the court's opinion. And doing a trial like this twice frustrates the purposes of judicial economy."

In my view, the superior court resolved the legal issue incorrectly. The medical care that Lucier received at Medicaid's expense was a collateral source benefit and its value may not be used to reduce her damages award, except under the conditions and procedures laid out in AS 09.17.070.[4] An injured person is entitled to recover the reasonable value of services provided by doctors, nurses, and hospitals, and "[t]here may be recovery for these items although they are not yet paid."[5] "The value of medical services made necessary by the tort can ordinarily be recovered although they have created no liability or expense to the injured person, as when a physician donates his services."[6] Other courts have held that when a medical provider accepts payment of less than the value of the care and writes off the rest, the collateral source rule covers the entire value, including the amount written off.[7] There is no reason to distinguish between cases where the provider writes off part of the care's value out of charity, because it has no hope of collecting, and cases where the payment is coming from

petitioner has not convinced us that there is need for early consideration of a non-appealable order . . . .
This statement equally applies to cases such as the present where petitions for review are initially granted and then dismissed as improvidently granted.

2. Alaska R.App. P. 402(b)(2).

3. Alaska R.App. P. 402(b)(1).

4. See Liimatta v. Vest, 45 P.3d 310, 317 (Alaska 2002) (denominating "free medical and dental care" as "collateral source benefits"); see also RESTATEMENT (SECOND) OF TORTS § 920A

cmt. c(4) (applying collateral source rule to "[s]ocial legislation benefits").

5. RESTATEMENT (SECOND) OF TORTS § 924(c) cmt. f.

6. Id.; see also Ellsworth v. Schelbrock, 235 Wis.2d 678, 611 N.W.2d 764, 768–69 (2000) ("[T]he test is the reasonable value, not the actual charge . . . .") (quotation marks and emphasis omitted).

7. E.g., Olariu v. Marrero, 248 Ga.App. 824, 549 S.E.2d 121, 123 (2001); Acuar v. Letourneau, 260 Va. 180, 531 S.E.2d 316, 322 (2000).

an insurer—governmental or private—with bargaining power. The amount discounted out of a medical bill is part of the value of that collateral benefit and should not accrue to the defendant.[8] Otherwise a plaintiff whose insurer has the leverage to negotiate large reductions in bills is placed in a worse position than a plaintiff whose medical care is provided for free by a charitable doctor. The recipient of charity would be entitled to the full value of her care, but the insured plaintiff, inequitably, would not. By erroneously ruling that the collateral source rule did not cover the value of Lucier's medical care over the amount that her providers accepted from Medicaid, the trial court set up this situation.

But even if this court wishes to defer its decision on the merits of this issue, the procedure that the superior court chose to implement its decision violates AS 09.17.070 and has additional detrimental effects. If this court ultimately determines that American Linen is entitled to an offset for charges that Medicaid did not pay, pursuant to AS 09.17.070, it is wrong to make that reduction before the end of trial by limiting Lucier's proof as the superior court has done. Alaska Statute 09.17.070(a) provides that *"[a]fter* the fact finder has rendered an award to a claimant, and *after* the court has awarded costs and attorney fees, a defendant may introduce evidence of amounts received or to be received by the claimant as compensation for the same injury from collateral sources that do not have a right of subrogation by law or contract." (Emphasis added.) And under AS 09.17.070(b) and (c), a reduction of plaintiff's recovery may be made only to the extent that the qualifying collateral benefits exceed her attorney's fees and the cost of obtaining the coverage, provided that none of the exceptions in AS 09.17.070(d) apply.

Allowing the reduction to be made prior to verdict will result in presentation to the jury of an artificially low value for Lucier's medical expenses. This, as the superior court

recognized when granting the stay, "[c]ould easily impact not only past medical damages but also non-economic damages and future damages." And although the trial court did not limit Lucier's ability to present the market cost of her future medical care, which could include five or six additional surgeries, as Lucier points out in her brief, "[t]he jury cannot be expected to understand the discrepancy in relative costs between her past and future medical expenses without it being informed that her past medical expenses were principally covered by Medicaid at discount rates." Thus, the trial court's order forces Lucier to reveal to the jury that her past medical expenses were covered by collateral source benefits or risk having the jury underestimate the severity of her injuries and her future medical expenses. This is in direct violation of our longstanding rule that collateral source evidence should not be admitted at trial in order to reduce the amount of damages. "Chief among the reasons [for exclusion] is the possible prejudice to the plaintiff which attends informing the jury that [he or she] has already received some . . . compensation for the injuries complained of." [9] The superior court's plan to instruct the jury that Lucier's reasonable medical expenses are limited to the amount paid by Medicaid—even with no mention of Medicaid itself—violates the statute and our case law, and will irreparably prejudice Lucier.

Furthermore, the trial court's chosen procedure creates the potential for a wasteful and unnecessary second trial. If on appeal we reverse the trial court's collateral source ruling, the parties will have to retry damages to correct the prejudicial effect of the evidence of the actual Medicaid payments. On the other hand, if the trial court were to follow the procedure envisioned by AS 09.17.070 and allow evidence of the full value of the services to go to the jury but then, after any award, hear the defendants' evidence on collateral source benefits and make

---

8. *See Ellsworth,* 611 N.W.2d at 769 ("[The defendant] is not entitled to reap the benefit of [the plaintiff's] eligibility for public assistance or from the government's economic clout in the health care market place.").

9. *Liimatta,* 45 P.3d at 318 (citing William H. Danne, Jr., Annotation, *Admissibility of Evidence That Injured Plaintiff Received Benefits From a Collateral Source, On Issue of Malingering or Motivation to Extend Period of Disability,* 47 A.L.R.3d 234 (1973) (brackets omitted)).

any appropriate statutory offset, then no retrial would be necessary. If a later ruling by this court showed that the wrong value had been used for Lucier's past medical expenses, her proof of other damages would not have been prejudiced at trial, and correcting the award would be simple. Even if this court wishes to leave open the question whether Lucier is entitled to the full value of her medical care under the collateral source rule, it should at least rule on the trial court's procedure, correcting it to allow that court maximum flexibility in responding to any future mandate.

For these reasons, I respectfully dissent from the court's decision to dismiss the petition as improvidently granted.