Joseph LEITINGER, Bonnie Leitinger and Services Unlimited, Plaintiffs-Appellants,

v.

VAN BUREN MANAGEMENT, INC., and American Economy Insurance Company, Defendants,

DBART, INC., d/b/a Barthenheier Construction, Inc., and Heritage Mutual Insurance Company, n/k/a Acuity, a mutual insurance company, Defendants-Respondents,†

COMPCARE HEALTH SERVICES INSURANCE CORP., Defendant.

Court of Appeals

*No. 2005AP2030. Submitted on briefs May 1, 2006.
—Decided June 27, 2006.*

2006 WI App 146

(Also reported in 720 N.W.2d 152.)

† Petition to review granted 10/10/06.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Timothy J. Aiken* and *James C. Gallanis* of *Aiken & Scoptur, S.C.*

On behalf of the defendants-respondents, the cause was submitted on the brief of *Arthur P. Simpson* and *Christine M. Rice* of *Simpson & Deardorff, S.C.*

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. KESSLER, J. This case involves the application of the collateral source rule to a personal injury claim. Based on the parties' stipulation to various facts, this case presents a single legal issue: whether defendants in a personal injury case are permitted to introduce evidence of the amount of medical expenses actually paid, as opposed to the amount of expenses billed, in order to show that the billed expenses were not reasonable. We conclude that the amount paid for the plaintiff's medical treatment by a collateral source—plaintiff's health insurance carrier—was inadmissible, based on the application of well-established Wisconsin law. *See Koffman v. Leichtfuss*, 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201. Therefore, we reverse the judgment. Despite this reversal, no new trial is necessary because the parties have stipulated to what will happen if this court reverses the judgment.

## BACKGROUND

¶ 2. Joseph Leitinger was injured in a construction accident. The amount billed for medical services by Leitinger's health care providers totaled $154,818.51. As a result of negotiated discounts, the amount actually paid by his health insurance provider was $111,394.73.

¶ 3. Leitinger, his wife Bonnie, and Services Unlimited (collectively, "Leitinger") sued numerous defendants (collectively, "DBart") for damages resulting from

374

his injuries. Compcare Health Services Insurance Corp. was joined to resolve its subrogation rights.[1]

¶ 4. Prior to trial, Leitinger moved *in limine* for an order barring DBart from introducing evidence of the amount actually paid by Leitinger's health insurance provider for Leitinger's medical treatment. DBart opposed the motion, asserting that the collateral source rule was not applicable because the parties had not stipulated to the reasonableness of the amounts charged. DBart argued that evidence of the amounts actually paid was admissible to prove the reasonable value of the medical services.

¶ 5. The trial court denied the motion. The parties reached an agreement that preserved the issue of law—whether evidence of the amount actually paid was admissible—and streamlined the trial. Specifically, Leitinger agreed for purposes of the trial that the amount actually paid by his health insurance provider was the "reasonable value" of the medical services, but reserved the right to appeal the admissibility of the actual amount paid. DBart agreed for purposes of the trial that if that evidence was inadmissible, then the entire amount billed was the reasonable cost of the treatment provided.

¶ 6. Consistent with this agreement, neither party produced an expert witness to testify as to the reasonableness of the amounts billed or of the amounts paid. The only evidence before the jury was the amount paid by Leitinger's health insurance provider. After the jury verdict, Leitinger moved for a new trial on grounds that the jury should not have been told the amount paid

---

[1] Compcare's subrogation rights were resolved by payment to Compcare of $57,000. That payment is not at issue in this appeal and will not be addressed.

by the health insurance provider. In effect, as Leitinger acknowledges, he asked the trial court to reconsider its earlier ruling *in limine.*

¶ 7. The trial court denied the motion, affirming its prior conclusion that it was proper to admit evidence that the health insurance provider had paid only $111,394.73 for Leitinger's medical treatment. The trial court distinguished *Koffman* on grounds that the parties in *Koffman* had stipulated as to the reasonable value of the medical services, whereas here the reasonable value was disputed. The trial court reasoned that the jury should be able to hear evidence of what was actually paid to help it determine if the amount billed was reasonable.

¶ 8. After the trial court denied Leitinger's motion, the parties entered into a stipulation and proposed order which resolved all issues except the collateral source dispute. The stipulation provided:

- The amount paid for medical expenses is $111,394.73 and the amount billed for medical expenses is $154,818.51.

- DBart "did not stipulate to the amount billed as reasonable, unless the amount paid is determined inadmissible evidence."

- DBart maintains "that the amount paid is relevant to the determination of what is a reasonable charge for medical bills." Conversely, Leitinger maintains that "the amount paid for medical bills is irrelevant to determining the reasonable amount for medical services and that this evidence should not be presented."

- Leitinger stipulated to the amount paid as the reasonable amount of the medical bills while reserving the "right to appeal the ruling that the amount paid is relevant evidence for consideration by the jury."

- If successful on appeal, Leitinger shall recover an additional $43,423.78 (the difference between the

amount billed for medical expenses and the amount
paid for medical expenses).

The trial court approved and signed the order. This
appeal followed.

## STANDARD OF REVIEW

¶ 9. At issue is whether DBart should have been
permitted to introduce evidence of the amount of medi-
cal expenses actually paid, as opposed to the amount of
expenses billed, in order to show that the billed ex-
penses were not reasonable. Although the admission of
evidence is generally vested in the trial court's discre-
tion, *see State v. Sullivan*, 216 Wis. 2d 768, 780–81, 576
N.W.2d 30 (1998), the issue in this case involves the
application of the collateral source rule to undisputed
facts (*i.e.*, DBart disputes the reasonable value of the
medical services provided and Leitinger's health insur-
ance provider paid less than the billed expenses), and
therefore presents an issue of law we decide *de novo*, *see*
*Koffman*, 246 Wis. 2d 31, ¶ 20.

## DISCUSSION

¶ 10. "An injured party is entitled to recover the
reasonable value of medical and nursing services from a
wrongdoer; and that recovery may not be reduced by
the fact that the services were gratuitously paid for or
provided by a collateral source." *Conant v. Physicians*
*Plus Med. Group, Inc.*, 229 Wis. 2d 271, 285, 600 N.W.2d
21 (Ct. App. 1999). This principle, known as the collat-
eral source rule, has been the subject of litigation in
nearly thirty published and unpublished appellate cases

377

in the last ten years. Of those, nearly all have affirmed application of the collateral source rule to prohibit evidence of payments made by third parties.

¶ 11. One of the cases that permitted introduction of collateral source evidence did so only because WIS. STAT. § 893.55(7) (2003–04),[2] which includes language limiting its application to medical malpractice cases, specifically authorized use of that evidence. *See Lagerstrom v. Myrtle Werth Hosp.-Mayo Health Sys.*, 2005 WI 124, ¶ 27, 285 Wis. 2d 1, 700 N.W.2d 201. Although no similar statute abrogates the long-standing application of the collateral source rule in other tort cases, DBart relies heavily on *Lagerstrom*.

¶ 12. The rationale for the collateral source rule has been repeatedly reaffirmed by our supreme court. In 2000 and again in 2001, the court refused to diminish the vitality or applicability of this rule. First, in *Ellsworth v. Schelbrock*, 2000 WI 63, 235 Wis. 2d 678, 611 N.W.2d 764, the court rejected a claim that the plaintiff had "incurred no liability" for medical expenses because she received Medical Assistance, which paid all the medical expenses occasioned by the tortfeasor. *Id.*, ¶ 12. The court relied, as it had in 1966,[3] on 22 AM. JUR. 2d *Damages* § 207 (1965), to state the applicable standard in Wisconsin:

> "The general rule is that a plaintiff who has been injured by the tortious conduct of the defendant is entitled to recover the reasonable value of medical and nursing services reasonably required by the injury. This is a recovery for their value and not for the expendi-

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[3] *See McLaughlin v. Chicago, Milwaukee, St. Paul & Pac. R.R.*, 31 Wis. 2d 378, 395–96, 143 N.W.2d 32 (1966).

tures actually made or obligations incurred. Thus, under this general rule, the fact that the medical and nursing services were rendered gratuitously to the one who was injured will not preclude the injured party from recovering the value of those services as part of his compensatory damages. Accordingly, *the plaintiff's recovery will not be reduced by the fact that the medical expenses were paid by some source collateral to the defendant, such as* by a beneficial society, by members of the plaintiff's family, by the plaintiff's employer, or *by an insurance company* . . . ."

*Ellsworth*, 235 Wis. 2d 678, ¶ 15 (quoting 22 AM. JUR. 2d *Damages* § 207 (1965); emphasis added; ellipsis supplied by *Ellsworth*).

¶ 13. The following year, in *Koffman*, the supreme court reversed a trial court ruling that the jury would hear evidence only of the amount of medical expenses actually paid. *Id.*, 246 Wis. 2d 31, ¶ 2. The court engaged in a lengthy discussion of the role health insurance carrier payments play in relation to the collateral source rule. *Id.*, ¶¶ 21–32. The court concluded that "the plaintiff is entitled to seek recovery of the reasonable value of the medical services, without limitation to the amounts paid." *Id.*, ¶ 2. The court observed that the total bill from the plaintiff's health care providers was $187,931.78, but that because of "certain contractual relationships with the plaintiff's health care providers" the defendant's insurance company "received the benefit of reduced 'contracted rates' and was able to satisfy its liability . . . with total payments of $62,324.00." *Id.*, ¶¶ 3–4.

¶ 14. A fact noted by the *Koffman* court that is equally relevant to the issue before us is that:

> The modern health care system employs a myriad of health care finance arrangements. As part of the

system, negotiated and contracted discounts between health care providers and insurers are increasingly prevalent. Pursuant to these agreements, an insurer's liability for the medical expenses billed to its insured is often satisfied at discounted rates, with the remainder being "written-off" by the health care provider.

The case at hand requires us to examine the implications of such arrangements on medical expense damages in a personal injury action in Wisconsin.

*Id.*, ¶¶ 21, 22.

¶ 15. Although the parties in *Koffman* stipulated that the amount billed for services was reasonable, the court did not decide the case on that basis. The court explained:

In Wisconsin, a plaintiff who has been injured by the tortious conduct of another may recover the reasonable value of medical services rendered . . . . [We have] explained that while the actual amount paid for medical services *may* reflect the reasonable value of the treatment rendered, the focus is on the reasonable value, not the actual charge. In other words " '[t]his is a recovery for their value *and not for the expenditures actually made* or obligations incurred.' "

*Id.*, ¶ 27 (citations and footnote omitted; emphasis added).

¶ 16. The *Koffman* court concluded that the benefit an insurance company gains by negotiating reduced rates with some health care providers does not justify an exception to the collateral source rule. In coming to that conclusion, the court observed:

In the context of medical expense damages, the collateral source rule allows the plaintiff to seek recovery of the reasonable value of medical services *without consideration of* gratuitous medical services rendered

or *payments made by outside sources on the plaintiff's behalf, including insurance payments. Where the plaintiff's health care providers settle the plaintiff's medical bills with the plaintiff's insurers at reduced rates, the collateral · source rule dictates that the defendant-tortfeasor not receive the benefit of the written-off amounts.* The benefit of the reduced payments inures solely to the plaintiff.

Applying the collateral source rule to payments that have been reduced by contractual arrangements between insurers and health care providers assures that the liability of similarly situated defendants is not dependent on the relative fortuity of the manner in which each plaintiff's medical expenses are financed. One plaintiff may be uninsured and receive the benefit of Medical Assistance, another's insurer may have paid full value for the treatment, and yet another's insurer may have received the benefit of reduced contractual rates. *Despite the various insurance arrangements that exist in each case, the factor controlling a defendant's liability for medical expenses is the reasonable value of the treatment rendered.*

In the case before us, as in *Ellsworth,* the collateral source rule is fully operational. It prevents the discounted rates paid on the insurer's behalf from affecting the plaintiff's recovery of the reasonable value of medical services rendered. *The rule renders irrelevant the amounts of the collateral source payments . . .* and precludes a reduction in medical expense damages based on those payments.

*Koffman*, 246 Wis. 2d 31, ¶¶ 30–32 (footnote and citations omitted; emphasis added).

¶ 17. Pursuant to *Koffman*, the fact finder should not be allowed to consider "payments made by outside sources on the plaintiff's behalf, including insurance payments." *Id.*, ¶ 30. Here, as in *Koffman*, the actual

amount paid to the health care providers for medical services should not have been disclosed to the jury.

¶ 18. We recognize that DBart introduced this evidence because it believed that the amounts billed were not reasonable. However, both *Koffman* and *Ellsworth* recognize that while a health insurance provider may negotiate discounted rates with a health care provider, that negotiated rate is not evidence of the reasonable value of those medical services for purposes of determining damages in a tort claim. Consequently, a defendant must produce some competent evidence *other than* what the insurance company paid upon which to base its argument that the amount billed was not the reasonable value of the services. Thus, DBart was not precluded from introducing relevant evidence that the billed amounts were unreasonable. For instance, DBart could have offered expert testimony as to the reasonable value of the medical services provided in support of its argument that the amount billed for the medical services was not the reasonable value of the services. Instead, it chose to rely solely on its assertion that the actual amount paid by an insurance company is admissible evidence of reasonable value. For the reasons already explained, we reject that assertion.

## CONCLUSION

¶ 19. We conclude that the collateral source rule prohibits defendants in a personal injury case from introducing evidence of the amount of medical expenses actually paid for the purpose of showing that the billed expenses were not reasonable. Therefore, we reverse the judgment. Despite this reversal, no new trial is

necessary because the parties have stipulated to what will happen if this court reverses the judgment.[4]

*By the Court.*—Judgment reversed.

---

[4] We thank the lawyers involved for narrowly framing the issue, and for stipulating to the implications of reversal, so that both economy of judicial resources and fiscal economy for their respective clients are realized.