MAASSEN, Justice.
I. INTRODUCTION
A woman was seriously injured when she slipped and fell on ice in a hotel parking lot. Medicare covered her medical expenses, settling the providers' bills by paying less than one-fifth of the amounts billed. When the woman later sued the hotel for negligence, the hotel sought to bar her from introducing her original medical bills as evidence of her damages, arguing that only the amount Medicare actually paid was relevant and admissible. The superior court agreed and excluded the evidence.
We granted the woman's petition for review, which asked us to decide the following questions: (1) whether evidence of medical expenses is properly limited to the amounts actually paid, or whether the amounts billed by the providers-even if later discounted-are relevant evidence of damages; and (2) whether the difference between the amounts billed by the providers and the amounts actually paid is a benefit from a collateral source, subject to the collateral source rule.
We conclude that the amounts billed by the providers are relevant evidence of the medical services' reasonable value. We further conclude that the difference between the amounts billed and the amounts paid is a benefit to the injured party that is subject to the collateral source rule; as such, evidence of the amounts paid is excluded from the jury's consideration but is subject to post-trial proceedings under AS 09.17.070 for possible reduction of the damages award. We therefore reverse the superior court's decision to exclude evidence of the undiscounted medical bills.
II. FACTS AND PROCEEDINGS
Lorena Weston was injured when she slipped and fell on ice in the parking lot of a hotel owned by AKHappytime, LLC. She fractured her right wrist and her right leg and was taken to the Alaska Native Medical Center, where she underwent a complicated surgery. The hospital billed her over $135,000, but Medicare settled the bills in full by the payment of $24,247.45.
Weston later sued AKHappytime for negligence. AKHappytime moved for a pretrial ruling excluding evidence of Weston's medical bills other than "the adjusted, preferred rates accepted by her providers as full and final payment for medical services rendered." AKHappytime argued that the medical bills should be excluded from evidence because they were "inflated" and did "not reflect the 'reasonable value' of the services rendered, nor was this amount ever incurred or owed by [Weston]." The superior court granted the motion, ruling that Weston could "only recover the adjusted medical rates accepted by her providers as full and final payment for medical services rendered, and only such adjusted medical rates may be admitted at trial."
*1020 Weston filed a petition for review, which we granted.
III. STANDARD OF REVIEW
We review the superior court's conclusions of law de novo.[1] We "will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[2]
IV. DISCUSSION
Weston's petition for review presents essentially two issues. First, was it error to exclude evidence of her full, undiscounted medical bills after her medical care providers accepted less from Medicare as payment in full? Second, if Weston's medical bills are admissible, should the difference between those bills and what Medicare paid be viewed as a benefit to Weston from a collateral source-meaning that evidence of it should be kept from the jury and presented only after trial, when the court determines pursuant to AS 09.17.070 whether some or all of the collateral source benefits should reduce the damages award? Our superior courts have reached conflicting decisions on these questions,[3] as have the courts of other jurisdictions.[4]
A. Background: Tort Damages, The Collateral Source Rule, And Alaska Case Law
1. Tort damages
The general rule in tort cases is that "the injured party is entitled to be placed as nearly as possible in the position he [or she] would have occupied had it not been for the tortious conduct."[5] The injured party may recover both economic and non-economic damages. "Economic damages include past medical expenses, future medical expenses, lost wages, and lost earning potential."[6] Non-economic damages provide compensation for "pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life, loss of consortium, and other nonpecuniary damage."[7]
Weston's damages claims included a claim for her past medical expenses. To *1021 recover on this claim she had to show that the medical care was reasonably necessary[8] and that it was necessary because of AKHappytime's negligence.[9] She also had "the burden of providing 'some reasonable basis upon which a jury [could] estimate with a fair degree of certainty the probable loss which [she sustained] in order to enable it to make an intelligent determination of the extent of this loss.' "[10]
2. The collateral source rule
Damages for personal injury are subject to the collateral source rule, "which provides that damages may not be diminished or mitigated on account of payments received by plaintiff from a source other than the defendant."[11] The rule "is based on the principle that a tort-feasor is not entitled to have his [or her] liability reduced merely because plaintiff was fortunate enough to have received compensation for his [or her] injuries or expenses from a collateral source."[12] Evidence of payments from collateral sources is thus generally excluded at trial as more prejudicial than probative;[13] exclusion is based on the assumption that if the jury knows that the plaintiff has been or will be compensated for the injuries by someone other than the defendant, this information "will more likely than not influence the jury against the plaintiff on the issues of liability and damages."[14]
Alaska Statute 09.17.070 modifies the common-law collateral source rule.[15] It creates a post-verdict procedure for reducing a damage award if the plaintiff has received amounts "as compensation for the same injury from collateral sources that do not have a right of subrogation by law or contract."[16] "After the fact finder has rendered an award," the defendant is allowed to introduce evidence of collateral source benefits;[17] the plaintiff may respond with "evidence of (1) the amount that the actual attorney fees incurred ... in obtaining the award exceed the amount of attorney fees awarded ... by the court; and (2) the amount that the claimant has paid or contributed to secure the right to an insurance benefit introduced by the defendant as evidence."[18] "If the total amount of collateral benefits introduced as evidence [by the defendant] exceeds the total amount that the [plaintiff] introduced as evidence" of the attorney's fees and the costs of securing the benefits, the court is required to deduct the difference from the damages award.[19] This process "limits the circumstances in which a victim can receive double *1022 recovery, while enhancing the chances that a tortfeasor may not be held fully accountable."[20]
In Loncar v. Gray we recognized that the collateral source rule applied to evidence of the plaintiff's Medicaid coverage, which "the superior court appropriately excluded ... at the beginning of the trial."[21] After one of the plaintiff's doctors mentioned Medicaid on cross-examination, the superior court gave a curative instruction: it advised the jury to "award the full amount of necessary medical expenses ... regardless of whether they have been paid or who actually paid the bill. Following the trial, the law provides procedures to ensure that this issue is properly addressed."[22] We saw "no abuse of discretion in the superior court's treatment of the Medicaid evidence."[23]
3. Luther v. Lander and the dissent in Lucier v. Steiner Corporation
Weston relies on our recent decision in Luther v. Lander[24] to argue that we have already decided the issue of whether her "full medical billings are admissible at trial." Luther was injured in a car accident and sued Lander for negligence.[25] At trial Luther sought to introduce evidence of the medical expenses paid by her insurer, GEICO, as proof of her damages, but the superior court granted Lander's request that the evidence be excluded.[26] Although the superior court did not explain its ruling, we presumed that it was based on the rule that a plaintiff cannot present a subrogated claim for medical expenses if the insurer has asserted its right to pursue the claim itself.[27] We reversed the superior court's ruling, holding that the medical expenses paid by GEICO were relevant to the severity of Luther's injury even if she could not recover them as economic damages.[28] We reasoned that "[j]ust as photographic evidence and testimony about the lack of serious damage to Luther's and Lander's vehicles [were] relevant as potentially reflecting the severity of the accident, so too is the amount of medical payments," and it is "for the jury to determine the weight to be given that evidence."[29] We also noted the "anomalous result" if different plaintiffs' ability to present such evidence turned on whether their insurers had elected to pursue their subrogated claims.[30]
Weston asserts that Luther is controlling authority because, when holding that the plaintiff's evidence should have been admitted, we did not distinguish "between amounts billed and amounts paid ." But the issue in Luther was framed as involving only medical costs paid by GEICO;[31] we did not expressly consider the significance of any difference between undiscounted medical bills and the amounts paid. Nonetheless, in holding that evidence of the amounts charged was admissible, we recognized medical bills' relevance to the nature and severity of a plaintiff's injuries.[32]
The issue presented now was before us on another petition for review, which we denied as improvidently granted in *1023 Lucier v. Steiner Corporation.[33] Justice Fabe, joined by Justice Carpeneti, dissented from the order denying review.[34] Lucier's injuries were covered by Medicaid, which "paid her medical providers only a small fraction of the amount they billed."[35] She sued in tort, and at trial the court "ruled that in proving the value of her past medical expenses, Lucier [would] be limited to the actual amount paid by Medicaid, rather than the value that her providers placed on their services."[36]
According to the dissent, it was legal error to exclude from evidence the undiscounted amounts billed by Lucier's providers: "The medical care that Lucier received at Medicaid's expense was a collateral source benefit and its value [could] not be used to reduce her damages award, except under the conditions and procedures laid out in AS 09.17.070."[37] The dissent noted the decisions of other courts that "when a medical provider accepts payment of less than the value of the care and writes off the rest, the collateral source rule covers the entire value, including the amount written off."[38] It proposed that there was "no reason to distinguish between cases where the provider writes off part of the care's value out of charity, because it has no hope of collecting, and cases where the payment is coming from an insurer-governmental or private-with bargaining power."[39] In either case, "[t]he amount discounted out of a medical bill is part of the value of that collateral benefit and should not accrue to the defendant."[40]
The Lucier dissent also argued that the trial court's exclusion of the evidence violated AS 09.17.070, the statutory collateral source rule.[41] Under the rule, it is only "[a]fter the fact finder has rendered an award to a claimant" that the defendant may present evidence of amounts the plaintiff received "from collateral sources that do not have a right of subrogation by law or contract."[42] The dissent argued that if the statutory post-verdict procedure is not followed-and billings for medical care are already reduced as collateral source benefits when presented to the jury-the jury will receive "an artificially low value" of the medical expenses, which could impact its view not only of past medical damages but also of the seriousness of the plaintiff's claims for non-economic damages.[43] And if the plaintiff explains to the jury why the medical expenses appear low-because they were covered in whole or in part by a collateral source-this risks "irreparably prejudic[ing]" the plaintiff's case.[44]
B. Other Jurisdictions' Case Law
Other state courts have taken essentially three approaches to the issue of whether to admit undiscounted medical bills into evidence when the bills have been satisfied for less. These are (1) the "actual amount paid" approach, which allows into evidence only the actual amount paid for medical care; (2) the "benefit of the bargain" approach, which allows the undiscounted medical bills into evidence if the plaintiff paid meaningful consideration for the insurance or other collateral source from which payment was made; and (3) the "reasonable value" approach, which allows admission of undiscounted medical bills without restriction as at least some evidence of the medical services' value.[45]
*1024 1. The "actual amount paid" approach
A handful of states follow the "actual amount paid" approach, which "limits a plaintiff's recovery to the amount actually paid to the medical provider, either by insurance or otherwise."[46] The rationale for this rule is that the plaintiff would receive a windfall if allowed to recover the total amount billed "because the plaintiff did not incur the 'write-off' amount."[47]
Today's dissent advocates for this approach. AKHappytime also urges us to follow this rule, arguing that it follows from the Restatement of Torts, which we often cite when clarifying the common law.[48] Section 924 of the Restatement (Second) of Torts provides that "[o]ne whose interests of personality [sic] have been tortiously invaded is entitled to recover damages for past or prospective ... reasonable medical and other expenses."[49] Comment f to section 924 explains that an "injured person is entitled to damages for all expenses and for the value of services reasonably made necessary by the harm."[50] AKHappytime points out that "value" is defined in section 911 as "exchange value or the value to the owner if this is greater than the exchange value";[51] and comment h to that section provides that "[i]f ... the injured person paid less than the exchange rate, he [or she] can recover no more than the amount paid, except when the low rate was intended as a gift to him [or her]."[52]
The California Supreme Court has adopted this approach, ruling "that a plaintiff's expenses, to be recoverable, must be both incurred and reasonable" and relying in part on Restatement section 911, comment h.[53] But the Tennessee Supreme Court has questioned whether comment h was ever "intended to apply to cases involving physical harm."[54] "Instead, it is intended to apply in cases where a plaintiff sues to recover the value of property or services the plaintiff rendered to the defendant," while "[i]n contrast, section 920A applies to 'Harm to the Person,' that is, personal injury cases."[55] Section 920A addresses the collateral source rule explicitly, stating that "[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the *1025 tortfeasor is liable."[56] And a comment explains that "[t]he law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him [or her]."[57]
The Supreme Judicial Court of Massachusetts explained the inherent weakness in relying on the amounts paid as presumptive proof of reasonableness:
[T]he actual amounts paid by an insurer to the provider may confound rather than mitigate the problems posed by medical bills, because the amounts paid, like the bills or charges themselves, may not have more than a tenuous relationship to the reasonable value of the provider's medical services. This is so because the discount from charges that the provider accepts is likely a function of a variety of factors, including the bargaining power of the insurer, or, as here, limited by Federal or State law-factors that relate to the injured plaintiff's relationship with a collateral third-party payor and have nothing to do with the tortfeasor.[58 ]
Courts have also rejected the "actual amount paid" approach on grounds that it makes irrational distinctions among plaintiffs depending on whether they have insurance and how much it covers. In effect, a "tortfeasor's liability is reduced when the victim is prudent and buys insurance, but it is increased when the victim has no insurance."[59] This not only creates a disparity in damages, it also allows a tortfeasor to derive a benefit from "compensation or indemnity that an injured party has received from a collateral source," seemingly in direct contravention of the collateral source rule.[60]
2. The "benefit of the bargain" approach
A few states have adopted an alternative sometimes called the "benefit of the bargain" approach, which "permits recovery of full, undiscounted medical bills, including the negotiated rate differential, only where the plaintiff paid consideration for the insurance benefits."[61] The plaintiff who has purchased insurance is assumed to have paid consideration for the "negotiated rate differential" as much as for "the actual cash payments" made by the insurer to the medical care providers.[62] But plaintiffs who "did not pay for the benefit of discounted rates and write-offs"-such as beneficiaries of Medicare and Medicaid-may not introduce their undiscounted billings;[63] in such cases the court "treat[s] the amount paid by Medicare [or Medicaid] as dispositive of the reasonable *1026 value of healthcare provider services."[64]
Criticisms of the "benefit of the bargain" approach include that it "protect[s] the rich and hurt[s] the poor, since persons who have the ability to pay for insurance are the only personal injury plaintiffs who may recover the negotiated rate differential"; and "that it 'undermines the collateral source rule by using the plaintiff's relationship with a third party to measure the tortfeasor's liability.' "[65]
3. The "reasonable value" approach
The final approach, the "reasonable value" approach, is used by the majority of courts to have addressed this issue; it allows the admission of undiscounted medical bills at trial, without restriction, as evidence of medical services' value.[66] Courts following this approach "adhere to the traditional collateral source rule, as outlined in Section 920A of the Restatement, that tortfeasors should be responsible for all the damage they cause and that plaintiffs, not tortfeasors, should benefit from any negotiated discount."[67] Some of these courts also emphasize that because the value of medical services is a fact-intensive question, juries should receive all relevant evidence, including undiscounted medical bills.[68] Some courts are reluctant to hold as a matter of law that providers' medical bills-even if rarely paid in full-are not evidence of the actual value of the services.[69]
The reasonable value approach, like the others, has its critics. The critics' main focus is on the "windfall" to the plaintiff, who may recover the negotiated rate differential even though neither the plaintiff nor the insurer is out of pocket for that sum.[70] Such a result "may be viewed as punitive toward the defendant."[71]
C. We Follow The "Reasonable Value" Approach, Which Is Consistent With The Collateral Source Rule.
1. The negotiated rate differential is a collateral source benefit.
The first step in deciding how to treat evidence of the negotiated rate differential at trial is to decide what the differential represents: Is it a part of the benefit the injured party receives from the collateral source? The dissent in Lucier concluded that *1027 it was: "The amount discounted out of a medical bill is part of the value of that collateral benefit and should not accrue to the defendant."[72] We agree with this reasoning and that of the majority of courts to have considered the issue.
Courts rely on a variety of rationales, all of which have some weight. Courts reason that an injured party benefits as much from the write-off of medical bills as from payment; both reduce the liability.[73] The injured party would remain responsible for any uncovered amount; a negotiated write-off eliminates that prospect.[74] A federal court reasoned that the negotiated rate differential is simply "[a] creditor's forgiveness of debt" that should be "considered equivalent to payment in other contexts, e.g., income tax, credit bids at foreclosure, etc."; therefore, "a creditor's partial forgiveness of a tort victim's medical bills via a write-down is properly considered a third-party 'payment,' evidence of which is barred by the collateral source rule."[75] And finally, courts reason that failing to recognize the benefit of the negotiated rate differential to the injured party would violate "the very purpose of the collateral source rule: to prevent a defendant from reaping the benefits of a plaintiff's preparation and protection."[76]
2. Undiscounted medical bills are generally admissible; trial evidence rebutting their reasonableness must respect the collateral source rule.
We also follow the majority of courts by adopting the "reasonable value" approach, in which an injured party is allowed to introduce the full, undiscounted medical bills into evidence at trial. This follows from our conclusion that the negotiated rate differential represents part of the benefit to the injured party. Both the actual amounts paid and any amounts the provider wrote off are relevant to the medical services' reasonable value.
This holding requires us to consider what evidence a defendant may raise to rebut the reasonableness of the dollar amounts in the plaintiff's undiscounted medical bills. Some states have tried a "hybrid approach" to determining reasonable value, in which the tortfeasor is allowed to respond to the injured party's reliance on undiscounted medical bills by showing the amount actually paid.[77] In a nod to the collateral source rule, mention of insurance is still avoided as much as possible.[78] But this approach has been criticized as likely to confuse the jury[79] and as permitting the defendant "to do indirectly what it cannot do directly, that is, ... seeking *1028 to limit [the plaintiff's] award ... by introducing evidence that payment was made by a collateral source."[80] We agree that this "hybrid approach" is highly likely to undermine the collateral source rule; therefore, evidence of what was actually paid should not be admitted if offered to rebut the reasonableness of the undiscounted bills.
We recognize that defendants' remaining evidentiary options for rebuttal are limited. But they are limited by the collateral source rule-which we continue to observe-and they do exist. Defendants may "submit any competent evidence in rebuttal that does not run afoul of the collateral source rule."[81] They "are free to cross-examine any witnesses that a plaintiff might call to establish reasonableness, and the defense is also free to call its own witnesses to testify that the billed amounts do not reflect the reasonable value of the services."[82] Such evidence may include, for example, testimony about the range of charges the provider has for the same services or what other providers in the relevant area charge for the same services.[83]
Finally, to the extent the negotiated rate differential represents a collateral benefit for which the collateral source has no "right of subrogation by law or contract," it is subject to the post-verdict procedure set out in AS 09.17.070.[84]
V. CONCLUSION
We REVERSE the superior court's order excluding Weston's undiscounted medical bills from evidence at trial and REMAND for further proceedings consistent with this opinion.

Loncar v. Gray , 28 P.3d 928, 930 (Alaska 2001).

State v. United Cook Inlet Drift Ass'n , 895 P.2d 947, 950 (Alaska 1995).

Compare McCleod v. Spenard Builders Supply, LLC , No. 3PA-14-01198 CI (Alaska Super., June 16, 2016) ("Plaintiffs are only entitled to recover what they actually spent."), Domer v. Bre Select Hotels Properties, LLC , No. 3AN-15-06668 CI, (Alaska Super., May 17, 2016) (limiting recovery to "the Medicaid and/or Medicare rates accepted by ... providers"), Suyarkov v. Lutton , No. 3AN-13-06084 CI (Alaska Super., May 19, 2016) (adopting evidentiary rule for "adjusted medical rates"), and Wagner v. Royal Hyway Tours, Inc. , No. 3AN-13-09055 CI, (Alaska Super., Feb. 11, 2015) (granting partial summary judgment on amount of treatment paid by insurance "[u]nder those contracts"), with Rodgers v. Bistro It, LLC , No. 3AN-16-04158 CI, (Alaska Super., Sept. 28, 2016) (denying defendant's motion for order that plaintiff "may not recover medical expenses in excess of rates paid by Medicare to medical providers on his behalf"), and Norman v. Plaza Inn Hotels, Inc. , No. 3AN-15-08838 CI, (Alaska Super., Aug. 23, 2016) (denying defendant's "Motion for Rule of Law that Plaintiff May Not Recover Medical Expenses in Excess of Those Rates Paid by Medicare and Medicaid").

Compare Howell v. Hamilton Meats & Provisions, Inc. , 52 Cal.4th 541, 129 Cal.Rptr.3d 325, 257 P.3d 1130, 1145 (2011) ("[A]n injured plaintiff whose medical expenses are paid through private insurance may recover as economic damages no more than the amounts paid by the plaintiff or his or her insurer for the medical services received or still owing at the time of trial."), and Dyet v. McKinley , 139 Idaho 526, 81 P.3d 1236, 1239 (2003), abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr. , 151 Idaho 889, 265 P.3d 502, 508 (2011) (holding that plaintiff could not recover expenses covered by Medicare write-off under Idaho law because plaintiff was never obligated to pay that amount and allowing recovery could result in "double payment"), with Bynum v. Magno, 106 Hawai'i 81, 101 P.3d 1149, 1160 (2004), as amended (Dec. 2, 2004) ("[A] plaintiff, injured by the tortious conduct of a defendant, is entitled to recover the reasonable value of medical services and is not limited to the expenditures actually paid by Medicaid/Medicare."), and Dedmon v. Steelman , 535 S.W.3d 431, 467 (Tenn. 2017) ("[T]he Plaintiffs may submit evidence of Mrs. Dedmon's full, undiscounted medical bills as proof of her 'reasonable medical expenses,' and the Defendants are precluded from submitting evidence of discounted rates for medical services.").

ERA Helicopters, Inc. v. Digicon Alaska, Inc. , 518 P.2d 1057, 1059-60 (Alaska 1974).

Dedmon , 535 S.W.3d at 437.

AS 09.17.010(a).

Turner v. Municipality of Anchorage , 171 P.3d 180, 185 (Alaska 2007).

Pugliese v. Perdue , 988 P.2d 577, 580 (Alaska 1999) (discussing causation in the context of medical bills).

Alexander v. State, Dep't of Corr. , 221 P.3d 321, 324 (Alaska 2009) (quoting City of Fairbanks v. Nesbett , 432 P.2d 607, 616 (Alaska 1967) ).

Beaulieu v. Elliott , 434 P.2d 665, 673 (Alaska 1967).

Ridgeway v. N. Star Terminal & Stevedoring Co. , 378 P.2d 647, 650 (Alaska 1963). A collateral source is one that is independent of the tortfeasor-such as the "victim's own insurance or a charity"-as distinguished from the tortfeasor or the tortfeasor's insurer. Chenega Corp. v. Exxon Corp. , 991 P.2d 769, 790 (Alaska 1999).

Jones v. Bowie Indus., Inc. , 282 P.3d 316, 326 (Alaska 2012) ; see also Tolan v. ERA Helicopters, Inc. , 699 P.2d 1265, 1267 (Alaska 1985).

Ridgeway , 378 P.2d at 650.

Chenega Corp. , 991 P.2d at 791.

AS 09.17.070(a). We have explained what subrogation means in this context:
When an insurer pays expenses on behalf of an insured it is subrogated to the insured's claim. The insurer effectively receives an assignment of its expenditure by operation of law and contract. If the insurer does not object, the insured may include the subrogated claim in its claim against a third-party tortfeasor. Any proceeds recovered must be paid to the insurer, less pro rata costs and fees incurred by the insured in prosecuting and collecting the claim. But the subrogated claim belongs to the insurer. The insurer may pursue a direct action against the tortfeasor, discount and settle its claim, or determine that the claim should not be pursued.
Dixon v. Blackwell , 298 P.3d 185, 193 n.38 (Alaska 2013) (quoting Ruggles ex rel. Estate of Mayer v. Grow , 984 P.2d 509, 512 (Alaska 1999) ).

AS 09.17.070(a).

AS 09.17.070(b).

AS 09.17.070(c).

Chenega Corp. , 991 P.2d at 791.

28 P.3d 928, 933 (Alaska 2001).

Id. at 934.

Id.

373 P.3d 495 (Alaska 2016).

Id. at 497-98.

Id. at 498.

Id. at 500-01 (citing Ruggles ex rel. Estate of Mayer v. Grow , 984 P.2d 509, 512 (Alaska 1999) ).

Id. at 501-02.

Id . at 501.

Id. at 502.

See id. at 498 (describing superior court's order as excluding evidence revealing that GEICO "paid some of Luther's medical expenses after the accident" and "all evidence of the costs of the various treatment charges paid for by GEICO"); id. at 499 (framing claim of error as court's exclusion of "evidence of $10,000 in medical expenses paid by ... GEICO"); id. at 503 (summarizing holding as concluding "that the superior court erred by excluding the evidence of the cost of Luther's medical treatment covered by GEICO").

Id. at 501-02.

93 P.3d 1052 (Alaska 2004).

Id. at 1052-55 (Fabe, J., dissenting).

Id. at 1053.

Id.

Id.

Id. (citing Olariu v. Marrero , 248 Ga.App. 824, 549 S.E.2d 121, 123 (2001) ; Acuar v. Letourneau , 260 Va. 180, 531 S.E.2d 316, 322 (2000) ).

Id. at 1053-54.

Id. at 1054.

Id.

AS 09.17.070(a).

Lucier , 93 P.3d at 1054.

Id.

See Dedmon v. Steelman , 535 S.W.3d 431, 454-58 (Tenn. 2017). Our own analysis has been greatly aided by the Tennessee Supreme Court's recent and thorough discussion of the various approaches to this issue.

Id. at 454 ; see, e.g. , Howell v. Hamilton Meats & Provisions, Inc. , 52 Cal.4th 541, 129 Cal.Rptr.3d 325, 257 P.3d 1130, 1135-46 (2011) (holding that "a plaintiff may recover as economic damages no more than the reasonable value of the medical services received and is not entitled to recover the reasonable value if his or her actual loss was less" (emphasis in original)); Dyet v. McKinley , 139 Idaho 526, 81 P.3d 1236, 1239 (2003), abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr. , 151 Idaho 889, 265 P.3d 502, 508 (2011) (concluding that the write-off amount "is not an item of damages for which plaintiff may recover because plaintiff has incurred no liability therefor" (quoting Kastick v. U-Haul Co. of W. Mich. , 292 A.D.2d 797, 740 N.Y.S.2d 167, 169 (2002) )); Moorhead v. Crozer Chester Med. Ctr. , 564 Pa. 156, 765 A.2d 786, 789 (2001), abrogated on other grounds by Northbrook Life Ins. Co. v. Commonwealth , 597 Pa. 18, 949 A.2d 333 (2008) (holding that "the amount paid and accepted by [the provider] as payment in full for the medical services is the amount [a victim] is entitled to recover as compensatory damages"); Haygood v. De Escabedo , 356 S.W.3d 390, 395-96 (Tex. 2011) (holding that "the common-law collateral source rule does not allow recovery as damages of medical expenses a health care provider is not entitled to charge").

Bozeman v. State , 879 So. 2d 692, 702 (La. 2004) ; see Dedmon , 535 S.W.3d at 454-55.

See, e.g. , Schack v. Schack , 414 P.3d 639, 643 (Alaska 2018) (discussing limits on recovery for negligent infliction of emotional distress); Burton v. Fountainhead Dev., Inc. , 393 P.3d 387, 398-99 (Alaska 2017) (discussing damages available in defamation cases); Burnett v. Gov't Emps. Ins. Co. , 389 P.3d 27, 32 (Alaska 2017) (discussing circumstances under which duty arises to protect another's property).

Restatement (Second) of Torts § 924 ( Am. Law Inst. 1979).

Id. cmt. f (emphasis added).

Id. § 911(1).

Id. cmt. h.

Howell v. Hamilton Meats & Provisions, Inc. , 52 Cal.4th 541, 129 Cal.Rptr.3d 325, 257 P.3d 1130, 1138 (2011) (emphasis in original).

Dedmon v. Steelman , 535 S.W.3d 431, 457 (Tenn. 2017).

Id. (emphasis in original) (citing Wills v. Foster , 229 Ill.2d 393, 323 Ill.Dec. 26, 892 N.E.2d 1018, 1027 (2008) ).

Restatement (Second) of Torts § 920A.

Id. cmt. b.

Law v. Griffith , 457 Mass. 349, 930 N.E.2d 126, 133-34 (2010).

Dedmon , 535 S.W.3d at 456.

Id. (quoting Acuar v. Letourneau , 260 Va. 180, 531 S.E.2d 316, 322 (2000) ) (criticizing Howell v. Hamilton Meats & Provisions, Inc. , 52 Cal.4th 541, 129 Cal.Rptr.3d 325, 257 P.3d 1130 (2011) ); see also McConnell v. Wal-Mart Stores, Inc. , 995 F. Supp. 2d 1164, 1171 (D. Nev. 2014) ("The Howell case is ... squarely at odds with the collateral source rule, which utterly disregards the amount of money a tort victim is actually made to pay to remedy his injuries, in favor of awarding the reasonable cost of ameliorating the injuries, notwithstanding any potential 'double recovery' by the tort victim."). It is for these reasons that one federal district court judge, predicting Alaska law, decided that we would reject Howell and follow instead the dissent in Lucier v. Steiner Corp. , 93 P.3d 1052, 1053-55 (Alaska 2004) (Fabe, J., dissenting from dismissal of petition for review). Rupp v. Wal-Mart Stores, Inc. , No. 3:11-cv-00052 JWS, 2012 WL 1951829, at *1-3 (D. Alaska May 30, 2012) ; Dunkin v. Dorel Asia SRL , No. 5:10-cv-00004 JWS, 2012 WL 896270, at *1-3 (D. Alaska Mar. 15, 2012).

Dedmon , 535 S.W.3d at 456. As examples of courts following the "benefit of the bargain" approach, Dedmon cites Stayton v. Delaware Health Corp. , 117 A.3d 521, 531 (Del. 2015) (noting that the collateral source rule applies to "provider write-offs" but declining to extend it to Medicare write-offs, which are not "gratuities" to injured parties but rather bargains made "out of consideration for the taxpayers"), and Bozeman v. State , 879 So. 2d 692, 705 (La. 2004) ("[W]here the plaintiff pays no enrollment fee, has no wages deducted, and otherwise provides no consideration for the collateral source benefits he receives, we hold that the plaintiff is unable to recover the 'write-off' amount.").

Dedmon , 535 S.W.3d at 456.

Id.

Stayton , 117 A.3d at 533.

Dedmon , 535 S.W.3d at 456-57 (quoting Wills v. Foster , 229 Ill.2d 393, 323 Ill.Dec. 26, 892 N.E.2d 1018, 1027 (2008) ); see Wills , 323 Ill.Dec. 26, 892 N.E.2d at 1030 ("Courts employing [the benefit of the bargain] approach discriminate amongst plaintiffs, holding that only the sick or disabled plaintiff whose expenses are covered by Medicaid may not seek to recover the full billed amount of medical expenses.").

See Bynum v. Magno, 106 Hawai'i 81, 101 P.3d 1149, 1160 (2004), as amended (Dec. 2, 2004); Arthur v. Catour , 216 Ill.2d 72, 295 Ill.Dec. 641, 833 N.E.2d 847, 849 (2005) ; Stanley v. Walker , 906 N.E.2d 852, 858 (Ind. 2009) ; Rose v. Via Christi Health Sys., Inc. , 276 Kan. 539, 78 P.3d 798, 806 (2003), opinion modified on reh'g sub nom. Rose v. Via Christi Health Sys., Inc./St. Francis Campus , 279 Kan. 523, 113 P.3d 241 (2005) ; Baptist Healthcare Sys., Inc. v. Miller , 177 S.W.3d 676, 682-83 (Ky. 2005) ; Meek v. Montana Eighth Judicial Dist. Court , 379 Mont. 150, 349 P.3d 493, 496 (2015) ; Robinson v. Bates , 112 Ohio St.3d 17, 857 N.E.2d 1195, 1197 (2006) ; White v. Jubitz Corp. , 347 Or. 212, 219 P.3d 566, 579 (2009) ; Haselden v. Davis , 353 S.C. 481, 579 S.E.2d 293, 295 (2003) ; Papke v. Harbert , 738 N.W.2d 510, 535-36 (S.D. 2007) ; Dedmon , 535 S.W.3d at 466 ; Kenney v. Liston , 233 W.Va. 620, 760 S.E.2d 434, 444-46 (2014) ; Koffman v. Leichtfuss , 246 Wis.2d 31, 630 N.W.2d 201, 210 (2001).

Dedmon , 535 S.W.3d at 458.

See Robinson , 857 N.E.2d at 1200 ; Meek , 349 P.3d at 497 ; Haselden , 579 S.E.2d at 295.

See Papke , 738 N.W.2d at 535-36 ("We think it unwise for us to make a broad declaration that the reasonable value of medical services equals the amount paid, not the amount billed. Such decision would create an inference that the actual amount billed to patients by medical care providers is, as a matter of law, unreasonable ." (emphasis in original) (citations omitted)); see also Wills , 323 Ill.Dec. 26, 892 N.E.2d at 1025 ("In Illinois, a paid bill constitutes prima facie evidence of reasonableness. In a case in which the plaintiff seeks to admit a bill that has not been paid in whole or in part, he or she must establish reasonableness by other means ....").

Dedmon , 535 S.W.3d at 458 ; see also Wills , 323 Ill.Dec. 26, 892 N.E.2d at 1029.

Dedmon , 535 S.W.3d at 458.

Lucier v. Steiner Corp. , 93 P.3d 1052, 1054 (Alaska 2004) (Fabe, J., dissenting from dismissal of petition for review).

Dedmon , 535 S.W.3d at 459-60 ; Acuar v. Letourneau , 260 Va. 180, 531 S.E.2d 316, 322 (2000) ; Kenney v. Liston , 233 W.Va. 620, 760 S.E.2d 434, 446 (2014).

McConnell v. Wal-Mart Stores, Inc. , 995 F. Supp. 2d 1164, 1170 (D. Nev. 2014) ("If an insurer ultimately rejects coverage for any reason, or if payment by the insurer is otherwise frustrated after treatment, the provider can, and presumably will, still charge the full rate to the patient."); Rupp v. Wal-Mart Stores, Inc. , No. 3:11-cv-00052 JWS, 2012 WL 1951829, at *3 (D. Alaska May 30, 2012) (concluding that because the "[p]laintiff would have been responsible for the higher rates but for Medicaid's contract with the provider[,] ... the difference between the negotiated rate and the higher rate constitutes an amount received").

McConnell , 995 F. Supp. 2d at 1170.

Kenney , 760 S.E.2d at 446 ; see also Acuar , 531 S.E.2d at 323 ("The wrongdoer cannot reap the benefit of a contract for which the wrongdoer paid no compensation.").

Dedmon , 535 S.W.3d at 454, 463.

See id. at 458 ; Stanley v. Walker , 906 N.E.2d 852, 858 (Ind. 2009) ("The collateral source statute does not bar evidence of discounted amounts in order to determine the reasonable value of medical services. To the extent the adjustments or accepted charges for medical services may be introduced into evidence without referencing insurance, they are allowed."); Martinez v. Milburn Enters., Inc. , 290 Kan. 572, 233 P.3d 205, 207 (2010) ("[W]hen a finder of fact is determining the reasonable value of medical services, the collateral source rule bars admission of evidence stating that the expenses were paid by a collateral source. However, the rule does not ... bar ... the admission of evidence indicating that something less than the charged amount has satisfied ... the amount billed.").

Leitinger v. DBart, Inc. , 302 Wis.2d 110, 736 N.W.2d 1, 14 (2007) ; see also Wills v. Foster , 229 Ill.2d 393, 323 Ill.Dec. 26, 892 N.E.2d 1018, 1032-33 (2008).

Leitinger , 736 N.W.2d at 14 ; see also Aumand v. Dartmouth Hitchcock Med. Ctr. , 611 F. Supp. 2d 78, 91 (D.N.H. 2009) (observing that evidence of amounts paid, even if offered only to rebut reasonableness of undiscounted bills, "strikes the court as an end-run around the collateral source rule"); Wills , 323 Ill.Dec. 26, 892 N.E.2d at 1033 ("Defendants may not ... introduce evidence that the plaintiff's bills were settled for a lesser amount because to do so would undermine the collateral source rule.").

Dedmon , 535 S.W.3d at 466 ; see also Leitinger v. Van Buren Mgmt., Inc. , 295 Wis.2d 372, 720 N.W.2d 152, 158 (Wis. App. 2006) (holding that "a defendant must produce some competent evidence other than what the insurance company paid upon which to base its argument that the amount billed was not the reasonable value of the services" (emphasis in original)).

Wills , 323 Ill.Dec. 26, 892 N.E.2d at 1033 ; see also Leitinger , 720 N.W.2d at 158 (explaining that defendant "could have offered expert testimony as to the reasonable value of the medical services provided in support of its argument that the amount billed for the medical services was not the reasonable value of the services").

See, e.g. , Melo v. Allstate Ins. Co., 800 F. Supp. 2d 596, 602 (D. Vt. 2011) (allowing defense to "introduce any relevant evidence of the reasonable value of medical services that is not barred by the collateral source rule[, including], for example, evidence as to what the provider usually charges for the services provided, or what other providers usually charge"); Nomat v. Mota , No. OP 140102-U, 2015 WL 5257886, at *8 (Ill. App. 2015) (holding that defense expert should be allowed to testify about "reasonableness of medical bills for office visits, treatment, and markups for the hardware used in plaintiff's surgery" based on database of cost information in relevant geographic area).

Under federal law, Medicare has a right to subrogation for the actual amounts paid for medical care. 42 C.F.R. § 411.26 (2018). But Medicare does not have a right to subrogation for the negotiated difference between the amounts billed and the amounts paid. See 42 U.S.C. § 1395y(b)(2)(B)(iv) (2018) ("The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan.").